[Cite as *Heath v. Heath*, 2017-Ohio-5506.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| ROBERT G. HEATH, | : | |
| | | CASE NO. CA2016-08-011 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 6/26/2017 |
| - vs - | : | |
| | : | |
| TRUDY A. HEATH n.k.a. BRAHOSKY, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 04DRA0027


Isaac, Wiles, Burkholder & Teetor, LLC, Joanne S. Beasy, Two Miranova Place, Suite 700, Columbus, Ohio 43215, for plaintiff-appellee

Kristina M. Oesterle, P.O. Box 314, Washington C.H., Ohio 43160, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Trudy Heath n.k.a. Brahorsky ("Mother"), appeals a decision of the Fayette County Court of Common Pleas, Domestic Relations Division, denying her motion for change of custody of the parties' child.

{¶ 2} Mother and plaintiff-appellee, Robert Heath ("Father"), are the parents of a 14-year-old daughter. Following the parties' divorce in 2005, Mother was designated as the

child's residential parent and Father was granted parenting time. Both parties are remarried.

{¶ 3} After the divorce, Mother and the child moved to Colorado; Father remained in Ohio. Over the next several years, Mother repeatedly failed to provide Father with the parenting time he was entitled to pursuant to the divorce decree. The child remained in Colorado until June 2012 when a Colorado court ordered Mother to deliver the child to Father. Mother has since relocated to Ohio.

{¶ 4} In 2012, both parties filed several motions for contempt. Father also moved for change of custody and requested to be named the child's residential parent and legal custodian. Mother's motions were dismissed with prejudice pursuant to an agreed entry. A hearing on Father's motions was held before a magistrate over nine separate days between July 2012 and June 2013.

{¶ 5} In a decision filed on January 19, 2014, the magistrate found Mother in contempt for repeatedly decreasing or "flat-out den[ying]" Father's parenting time with the child in violation of the parties' numerous agreed entries. The magistrate further found that Mother's substantial interference with Father's parenting time constituted a change in circumstances, a change of custody was in the child's best interest, and the harm likely to be caused by a change of custody was outweighed by the advantages of the change. Consequently, the magistrate granted Father's motion for change of custody, designated Father as the residential parent and legal custodian of the child, and granted Mother parenting time. On June 20, 2014, the trial court adopted the magistrate's decision but awarded Mother increased parenting time for the summer.

{¶ 6} A month later, Mother moved to modify her parenting time. By agreed entry filed on April 16, 2015, the trial court awarded Mother increased parenting time. The agreed entry further stated, "All other provisions of the Court's June 20, 2014 Judgement Entry Adopting [the] Magistrate's [January 9, 2014] Decision shall remain in full force and effect."

- 2 -

{¶ 7} In the interim, Mother filed a criminal complaint against Father alleging that on March 15, 2015, Father committed felony domestic violence when he struck Mother's backside with a belt in the child's presence during a custody exchange in Father's home. The child testified as a state's witness in Father's criminal trial. A jury found Father not guilty of the charge. As a result of the domestic violence incident, a no contact order was put in place between the parties.

{¶ 8} On September 10, 2015, Mother moved to modify custody of the child, or in the alternative for either shared parenting or more parenting time. Mother alleged that Father's failure to timely provide medical care to the child, his withholding information regarding the child's education, medical appointments, and extracurricular activities, and Mother's difficulty in communicating with the child when the child is at Father's home constituted a change of circumstances warranting a change in custody.

{¶ 9} On June 27, 2016, the trial court conducted a bifurcated hearing, which dealt solely with the issue of whether there had been a change of circumstances. The police officer who had investigated the domestic violence incident and Mother both testified at the hearing. Mother twice sought to call the child as a witness, but the trial court denied Mother's request each time. Consequently, Mother proffered the child's testimony. Father then moved for a directed verdict. The trial court granted the motion on the record, finding that Mother had failed to establish a change of circumstances and that the issues raised by Mother "are issues that have all been churned before the Magistrate ad nauseam over the years."

{¶ 10} In an entry filed on July 6, 2016, the trial court treated Father's motion as one for a directed verdict, found that Mother had failed to establish a change of circumstances as required under R.C. 3109.04(E)(1)(a), granted Father's motion, and denied Mother's motion for change of custody.

{¶ 11} Mother now appeals, raising three assignments of error. The second and third assignments of error will be addressed first and together.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY LIMITING THE EVIDENCE THAT SHE COULD PRESENT.

{¶ 14} Assignment of Error No. 3:

{¶ 15} THE TRIAL COURT ABUSED ITS DISCRETION BY LIMITING THE EVIDENCE THAT APPELLANT COULD PRESENT.

{¶ 16} In both assignments of error, Mother argues the trial court abused its discretion and violated her due process rights when it did not allow the child to testify at the change-of-circumstances hearing. Mother asserts that because the child was a witness to the domestic violence incident and lived with Father, the child was the primary witness to many of the issues raised in Mother's motion for change of custody and was the only one who could testify as to the negative impact the domestic violence incident and Father's alleged failings had upon her.

{¶ 17} The record shows that during the change-of-circumstances hearing, Mother first sought to call the child as a witness following the police officer's limited testimony. The trial court did not allow the child to testify, stating: "let me listen to * * * other testimony and then I'll decide if we're going to hear from her." Subsequently, Mother testified and expressed concerns that Father does not properly and timely tend to the child's medical needs. Specifically, Mother complained that Father failed to have the child's thumb injury treated, did not make sure the child always has an inhaler for her asthma which resulted in the child using a friend's inhaler when the child had an asthma attack during basketball practice, and did not properly tend to the child's allergies.

{¶ 18} Mother claimed she has difficulty communicating with the child when the child is

at Father's home, and that Father was not home very much due to a change in his work schedule since the last custody order. Mother complained Father does not provide her information regarding the child's extracurricular activities, sports events, and medical treatment and appointments. Mother noted she was not listed at all on the registration/emergency medical form for the child's school, and that she was only listed as "other" on the school's student contacts summary form alongside an annotation stating, "Do not contact her for any reason."

{¶ 19} After Mother completed her testimony, she once again sought to call the child as witness. Once again, the trial court did not allow the child to testify, stating: "I have incorporated her testimony at the [domestic violence] trial. I'll permit you to proffer what she's going to say on the record here[.] But with the history of this case and in the absence of any Guardian Ad Litem at this junction I'm not, simply not going to ask her to testify. I'm not going to permit her to testify." Mother then proffered the child's testimony.

{¶ 20} According to the proffer, the child would have testified about Father's absence from home as a result of his work schedule, the fact the child isolates herself at Father's home due to her poor relationship with her stepmother, the verbal abuse she endures from her stepmother, Father's anger issues, Father's failure to tend to her medical needs, her difficulty in communicating with Mother when she lives with Father, her desire to stay with Mother when Father is not home, and her difficulty in seeing Mother's relatives when she lives with Father. Upon questioning by the trial court, Mother's counsel stated that unlike Mother's testimony, the child's testimony would have been first-hand, and that the change of circumstances consisted of Father's absence from home, the resulting increased time the child is spending with her stepmother, "and how that's having a negative impact on [the child]."

{¶ 21} At the time of the hearing, the child was almost 14 years old. She was

therefore competent to testify pursuant to Evid.R. 601(A) and R.C. 2317.01. Both provisions generally provide that every person is competent to be a witness except children under the age of ten. In addition, courts have traditionally allowed children of the parties to testify in domestic relations matters. *Moser v. Moser*, 72 Ohio App.3d 575, 579 (3d Dist.1991). "Public policy and private views of propriety do not justify a refusal to listen to competent testimony of young children where there is a need for such testimony." *Id.* "A blanket rule disallowing children of any age to testify in domestic relations matter is inconsistent with Evid.R. 601." *Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13CA13, 2014-Ohio-793, ¶ 13.

{¶ 22} The child's testimony, as set forth in the proffer, would have related to topics other than the domestic violence incident, would have focused on the child's life at Father's home and Father's alleged failings as witnessed and experienced firsthand by the child, and would have included how the various issues have affected her. This was not a situation involving a child of tender years. We therefore conclude the trial court erred in not allowing the child to testify as a witness at Mother's request. *Moser* at 579. This, however, does not end our analysis.

{¶ 23} "[I]n order for a reviewing court to reverse an evidentiary ruling of the trial court, an appellant must affirmatively demonstrate through the record on appeal not only that error was committed, in the technical sense, but also that such error was prejudicial to appellant, except in rare circumstances where the error is so substantial that prejudice will be presumed." *Moser*, 72 Ohio App.3d at 579-580; *Buckmaster*, 2014-Ohio-793 at ¶ 19.

{¶ 24} We begin by noting that it is well-established that the admission or exclusion of relevant evidence rests within the trial court's sound discretion. *Fox v. Fox*, 12th Dist. Clermont No. CA2013-08-066, 2014-Ohio-1887, ¶ 13. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5

- 6 -

Ohio St.3d 217, 219 (1983).

{¶ 25} Evid.R. 611(A) provides that a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." "Trial courts are given great deference in controlling their dockets[.]" *Mathewson v. Mathewson*, 2d Dist. Greene No. 05-CA-035, 2007-Ohio-574, ¶ 26. The trial court exercised its discretion to control the proceedings before it by not allowing the child to testify.

{¶ 26} "Where a trial court excludes evidence sought to be presented in a party's case-in-chief, that party is required to make an offer of proof." *Moser*, 72 Ohio App.3d at 580. Specifically, Evid.R. 103(A)(2) provides that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is thereby affected and the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked.

{¶ 27} A proffer generally consists of two elements. "First, the offering party must inform the trial court as to the legal theory upon which admissibility is proposed. Second, an offering party must show what a witness was expected to testify to and what that evidence would have proven or tended to have proven." *Moser* at 580. "While the proffer of the expected testimony need not be as specific as the testimony itself would have been[,] it must nonetheless be sufficient to enable the reviewing court to determine roughly what, if any, impact the testimony may have had upon the final disposition of the case." *Id.*

{¶ 28} The purpose of a proffer is to assist the reviewing court in determining whether the trial court's exclusion of certain evidence affected a substantial right of the complaining party. *Carter v. Carter*, 62 Ohio App.3d 167, 171 (12th Dist.1989). Upon reviewing the proffer of the child's testimony, we find it to be insufficient to allow us to determine whether

- 7 -

the trial court's exclusion of the testimony affected Mother's substantial right. While the proffer sufficiently described what the child's testimony would have been regarding her life at Father's home and Father's alleged failings, it was too general and thus insufficient as to the negative impact home life with Father and the stepmother had on the child, a crucial issue.[1]

{¶ 29} As stated above, Mother's counsel ended the proffer by stating that the child's testimony would show how Father's absence from home and the child's increased time with the stepmother was "having a negative impact on [the child]." However, no further details were provided as to the alleged "negative impact." No explanation was provided as to how the negative impact on the child manifested itself, such as whether it made the child sad or angry, made her physically sick, resulted in counseling, or affected her at school. A proffer describing specific incidents and events means nothing without any evidence or explanation of the negative impact on the child.

{¶ 30} Because the proffer was lacking regarding the alleged negative impact on the child, we cannot determine whether the trial court's exclusion of the child's testimony was prejudicial to Mother's substantial right. *Moser*, 72 Ohio App.3d at 580-581. Mother's second and third assignments of error are accordingly overruled.

{¶ 31} Assignment of Error No. 1:

{¶ 32} THE TRIAL COURT WAS IN ERROR BY GRANTING A DIRECTED VERDICT IN THIS MATTER.

{¶ 33} Mother argues the trial court erred in granting Father's motion for a directed verdict and denying her motion for change of custody. Mother asserts that the domestic violence incident, the resulting no contact order, Father's pattern of neglecting the child's

---

1. As more fully explained under Mother's first assignment of error, a trial court may modify a prior custody decree if it finds a change in the circumstances of either the child or the child's residential parent, and the change of circumstances has a material and adverse effect upon the child. *See* R.C. 3109.04(E)(1)(a); *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10.

medical issues, Mother's difficulty in communicating with the child when the child is at Father's home, and Mother's limited access to the child's educational, athletic, and medical records had a direct and adverse impact on the child and established a change of circumstances warranting a change in custody.

**{¶ 34}** Initially, we note that the change-of-circumstances hearing was held to the bench. Consequently, although Father moved for a "directed verdict" during the hearing and the trial court treated the motion as such, the motion was actually one for involuntary dismissal under Civ.R. 41(B)(2), and not for directed verdict under Civ.R. 50. *Aztec Internatl. Foods, Inc. v. Duenas*, 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 14, fn. 6. That is because a motion for directed verdict under Civ.R. 50 is "only appropriate when a matter is being tried to a jury." *Lopez v. Thomas*, 9th Dist. Summit No. 27115, 2014-Ohio-2513, ¶ 17. We will therefore construe Father's motion as one for dismissal under Civ.R. 41(B)(2). We note, however, that a "moving party is not prejudiced if the trial court erroneously applies the Civ.R. 50(A) standard for a directed verdict because it is much more rigorous than the standard for a dismissal under Civ.R. 41(B)(2). Satisfaction of the Civ.R. 50(A) standard implies satisfaction of the Civ.R. 41(B)(2) standard." *Duenas* at ¶ 14, fn. 6.

**{¶ 35}** In ruling on an involuntary dismissal under Civ.R. 41(B)(2), a trial court is not required to view the evidence in a light most favorable to the non-moving party. *Lopez* at ¶ 17. Rather, the court weighs the evidence, resolves any conflict, and may render judgment in favor of the defendant if the plaintiff has shown no right to relief. *Id.* The trial court's conclusions will not be set aside unless they are erroneous as a matter of law or against the manifest weight of the evidence. *Stepka v. McCormack*, 9th Dist. Lorain No. 14CA010611, 2016-Ohio-3103, ¶ 58.

**{¶ 36}** R.C. 3109.04(E)(1)(a) allows a trial court to modify a prior decree allocating parental rights and responsibilities only if it finds, based on facts that have arisen since the

- 9 -

prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or the child's residential parent, and that the modification is in the best interest of the child. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 21. The statute requires the court to "retain the residential parent designated by the prior decree" unless the modification is in the best interest of the child and one of three additional factors applies. *Id.*

{¶ 37} While R.C. 3109.04 does not define "change in circumstances," courts have generally held the phrase to note "an event, occurrence, or situation which has a material and adverse effect upon a child." *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10. In order to warrant a change of custody, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). "In determining whether a 'change' has occurred * * * a trial judge must have wide latitude in considering all the evidence before him * * * and such a decision must not be reversed absent an abuse of discretion." *Id.*

{¶ 38} In support of her argument that a change in circumstances has occurred since the trial court's prior custody order, Mother cites the domestic violence incident, Father's pattern of neglecting the child's medical issues, Mother's difficulty in communicating with the child when the child is at Father's home, and Mother's limited access to the child's educational, athletic, and medical records. At the change-of-circumstances hearing, the trial court, having presided over Father's domestic violence trial, notified the parties it would take judicial notice of the testimony given at the criminal trial, including the child's testimony.

{¶ 39} The child's testimony in that case was abbreviated and concerned the activities of her siblings, Mother, Father, and herself on the day of the domestic violence incident, how Mother and Father reacted to it, and the identification of a statement she made to the police regarding the incident. The child's testimony did not concern how the child was affected, if at

all, by the domestic violence incident. At the hearing, Mother acknowledged that the parties' agreed entry filed on April 16, 2015, was approved by her attorney three days after the domestic violence incident, and that with the exception of an added weekday overnight and increased summer parenting time, the parenting time schedule previously granted by the trial court remained unchanged following the domestic violence incident.

{¶ 40} The magistrate's January 2014 decision granting Father's motion for change of custody shows that at the time, the child was already suffering from allergies and had had a couple of health issues over the course of the previous years. At the change-of-circumstances hearing, Mother admitted that Father's pattern of neglecting the child's medical issues had been "a big concern of [hers]. Absolutely 100%" over the last several years. With regard to the child's medication, Mother acknowledged that the child was eventually provided an inhaler by Father and was "put back on the allergy prescription." Mother admitted she did not know whether Father had previously chosen to give the child over the counter allergy medication rather than an allergy prescription.

{¶ 41} Mother explained she had difficulty communicating with the child in the evenings due to a rule that "phones are put up at a certain time" at Father's home, and due to the fact that Father's home phone is in and out of service until 6:00 p.m. Mother remedied the problem by giving the child a second cellphone. Mother acknowledged that she has not spoken to Father since September 2015 and that a civil protection order put in place between the parties has interfered with her communication ability.

{¶ 42} Mother admitted that although Father provides limited information regarding the child's educational and athletic records, Mother is able to access the child's grades on the school website and has attended open houses and parent-teacher conferences at the child's school. Mother further stated that when her husband is in town, he attends the child's extracurricular activities and sports events.

{¶ 43} We find that the trial court did not err in finding that a change in circumstances did not occur. In granting Father's motion "for directed verdict" on the record during the change-of-circumstances hearing, the trial court specifically noted that the issues raised by Mother "are issues that have all been churned before the Magistrate ad nauseam over the years." The trial court, having presided over the issue of the child's custody since its inception, was in a position to better examine and weigh the evidence and arguments of the parties. *See Miller v. Miller*, 37 Ohio St.3d 71 (1988). Mother failed to demonstrate that the domestic violence incident, Father's pattern of neglecting the child's medical issues, Mother's difficulty in communicating with the child when the child is at Father's home, and Mother's limited access to the child's educational, athletic, and medical records were an "event, occurrence, or situation" which materially and adversely affected the child, or that the changes in circumstances were "of substance" and not a "slight or inconsequential change."

{¶ 44} We further find that the trial court's conclusions are neither erroneous as a matter of law nor against the manifest weight of the evidence. The record reveals that the trial court properly considered all the evidence. We therefore find that the trial court did not abuse its discretion in determining that a change in circumstances did not occur and did not err in granting Father's Civ.R. 41(B)(2) motion to dismiss Mother's motion for change of custody. *Flickinger*, 77 Ohio St.3d at 418; *Stevenson v. Kotnik*, 11th Dist. Lake No. 2010-L-063, 2011-Ohio-2585, ¶ 66.

{¶ 45} Mother's first assignment of error is overruled.

{¶ 46} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.

- 12 -