[Cite as *Blevins v. Blevins*, 2019-Ohio-297.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| DIANE L. BLEVINS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 2017-DR-43 |
| | : | |
| JOHN D. BLEVINS | : | (Domestic Relations Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of February, 2019.

. . . . . . . . . .

MICHELLE M. MACIOROWSKI, Atty. Reg. No. 0067692, 7333 Paragon Road, Suite 170, Dayton, Ohio 45459
      Attorney for Plaintiff-Appellee

KERI E. FARLEY, Atty. Reg. No. 0076881, 4031 Colonel Glenn Highway, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} John D. Blevins ("John") appeals from a final judgment and decree of divorce entered by the Greene County Common Pleas Court, Domestic Relations Division. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} John D. and Diane L. ("Diane") Blevins were married on June 13, 1992, and had three children together. When the couple separated in June 2017, one son was a 20-year-old college student and their daughter was a 15-year-old high school student. Their oldest son died in 2011, at the age of 16.

{¶ 3} John is a senior materials engineer in the Air Force research laboratory at Wright-Patterson Air Force Base. He travels "20 to 25 percent of the time" for his job, primarily on weekdays. His annual salary in 2018 was $143,193.

{¶ 4} Diane holds a bachelor's degree in elementary education and a master's degree in early childhood education. She previously worked full-time as a public school teacher, but beginning in 2003 did only substitute teaching, in order to be at home with the couple's children. Her full-time teaching license expired a number of years ago. In 2017, she earned a total of $3,069 as a substitute teacher. On August 1, 2018, Diane began a full-time position teaching at an early childcare and education center in Beavercreek, earning $24,900 per year at a rate of $12.00 per hour.

{¶ 5} Diane filed for divorce on February 16, 2017. Both parties testified at a hearing held a year later, on February 20, 2018. (*See* Transcript ("Tr."), Vol. I). During that hearing, John also presented the deposition testimony of a vocational expert who offered his opinion as to Diane's "employability" and earning potential (*id.*, pp. 38-60; *see*

2/20/18 Deposition of John Finch, Ph.D. ("Finch Depos.")), and Diane presented the testimony of an expert witness regarding the reasonableness of the fees charged by Diane's attorney. (Tr., Vol. II, pp. 5-15). In addition, the trial court conducted a private interview on that date with the parties' minor daughter (*see id.*, pp. 4, 217); (*see also* Tr., Vol I, pp. 6-7, 81), which is not part of the record.

{¶ 6} On May 25, 2018, the trial court issued a final judgment and decree of divorce that, among other things, awarded spousal support to Diane in the amount of $2,650 per month for 120 months;[1] denied John's request for an award of one-half of Diane's earnings from January to June 2017; ordered John to pay $20,000 of Diane's attorney's fees; and awarded Diane child support in the amount of $873.21 per month. (See Trial Court Docket ("Doc.") #103, Final Judgment and Decree of Divorce, pp. 5-6, 12, and attached Shared Parenting Plan, p. 3).

{¶ 7} John filed a timely appeal from that judgment entry, raising five assignments of error:

1) The trial court lost its way in determining [Diane's] earning ability for purposes of calculating spousal support.

2) The trial court abused its discretion in not imputing income to [Diane] for purposes of calculating child support.

3) The trial court abused its discretion in not permitting [John] to pursue one-half of [Diane's] first half earnings [for 2017].

---

[1] John asserts that the trial court awarded Diane spousal support "for an indefinite time period, although [Diane] only requested [such support] for 10 years." (Brief of the Appellant, "Statement of the Case"). To the contrary, the trial court limited the spousal support award to "a term of 120 months" (i.e., 10 years). (*See* Doc. #103, Final Judgment and Decree of Divorce, p. 6).

4) The trial court abused its discretion in awarding [Diane] $20,000 in attorney fees.

5) The trial court deprived [John] of due process when it would not permit him to present his own case or cross-examine [Diane] on contested issues.

### Assignment of Error #1 – Spousal Support

{¶ 8} A trial court "enjoys broad discretion" with regard to awards of spousal support. *Morgan v. Morgan*, 2d Dist. Montgomery No. 27164, 2017-Ohio-402, ¶ 47. An abuse of discretion occurs when the trial court's decision regarding spousal support is "unreasonable, arbitrary or unconscionable." *Hagar v. Sabry*, 2d Dist. Montgomery No. 27967, 2018-Ohio-4230, ¶ 10, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} In determining whether spousal support is appropriate and reasonable, as well as its amount, nature, and duration, a trial court must consider a variety of factors. *Baskin v. Baskin*, 2d Dist. Montgomery No. 27373, 2017-Ohio-7632, ¶ 10. These factors include: 1) the parties' income from all sources; 2) their relative earning abilities; 3) their ages and physical, mental, and emotional conditions; 4) the retirement benefits of the parties; 5) the duration of the marriage; 6) the extent to which it would be inappropriate for a party to seek employment outside the home (particularly if a custodian of a minor child of the marriage); 7) the parties' standard of living during the marriage; 8) their relative educations; 9) the parties' relative assets and liabilities; 10) the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; 11) the time and expense necessary for the spouse who is seeking spousal support to acquire

education, training, or job experience so that the spouse will be qualified to obtain appropriate employment; 12) the tax consequences, for each party, of an award of spousal support; and 13) the lost income production capacity of either party that resulted from that party's marital responsibilities. R.C. 3105.18(C)(1). The court also may consider any other factor that it expressly finds to be relevant and equitable. R.C. 3105.18(C)(1)(n).

{¶ 10} "When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money [that] a 'person could have earned if he [or she] made the effort.' " *Kraft v. Kraft*, 2d Dist. Montgomery No. 25982, 2014-Ohio-4852, ¶ 21, quoting *Miller v. Miller*, 2d Dist. Montgomery No. 14540, 1994 WL 730560, *4 (Dec. 28, 1994). "Because R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential." *Miller* at *4, citing, inter alia, *Frost v. Frost*, 84 Ohio App.3d 699, 618 N.E.2d 198 (10th Dist.1992).

{¶ 11} John argues that the trial court erred by failing to impute additional earning potential to Diane for purposes of calculating the amount and duration[2] of the spousal support she was to receive. Having reviewed the record, we cannot conclude that the trial court abused its discretion with respect to the amount of spousal support awarded in this instance. John's vocational expert did opine that Diane's "optimal vocational option" would be to return to school to complete the coursework necessary to reinstate her Ohio full-

---

[2] *See* fn.1, above. Because John raises no challenge to paying spousal support for 10 years, we will not address that aspect of the trial court's judgment.

time teaching license, and that doing so would give her an earning potential of $62,893 per year. (Fink Depos., pp. 31-32, 34). However, Diane testified that "it would be a terrible struggle" for her to complete the necessary courses while also parenting their daughter and working full-time in her current job. (Tr., Vol. I, pp. 98-99). She further testified that she felt disadvantaged in seeking a full-time teaching position by her lack of familiarity with modern technology and due to competing against more recent college graduates with more "up-to-date thoughts on education." (*Id.*, pp. 99-100). She expressed doubt that she would be capable of earning the $62,000 a year projected by John's expert. (*Id.*).

{¶ 12} The judgment entry shows that the trial court did not wholly disregard the vocational expert's testimony. Based on Diane's "education and job experience," the court "agree[d] that [Diane] may be capable for earning more than [her current income of] $24,000." (Doc. #103, Final Judgment and Decree of Divorce, p. 5). Nevertheless, the court observed that Diane "has not had a [full-time] teaching license since 2011," "has not consistently worked full-time for many years," and "will need to enroll and complete 9 credit hours as required by the Ohio Board of Education" in order to become eligible for a full-time teaching license. (*Id.*). In light of Diane's "current work schedule, parenting responsibilities, and financial responsibilities," the trial court found "it reasonable that [Diane] shall complete the required courses within three years" after the February 20, 2018 hearing. (*Id.*). The court further signaled its willingness to consider modifying the amount of spousal support "if [Diane] fails to renew her professional teaching license or fails to obtain employment paying a higher wage" within those three years. (*Id.*).

{¶ 13} The record reflects that the trial court considered the relevant factors under R.C. 3105.18(C)(1) in reaching its decision. The court highlighted specifically the parties'

disparate current incomes, Diane's reduced earning capacity due to leaving the full-time workforce in order to raise their children, and the need for Diane to complete further educational requirements in order to qualify for a higher-paying position. Weighing conflicting evidence is a matter entrusted to the trial court, which was in the best position to evaluate the evidence and assess the credibility of the witnesses. *See Greene v. Greene*, 2d Dist. Montgomery No. 12051, 1990 WL 107857, *3 (July 23, 1990). Furthermore, the trial court was not required to explain why it weighed some factors or testimony more heavily than others, and an appellate court should not second-guess a trial court's factual determination unless there has been an abuse of discretion. *Aldo v. Angle*, 2d Dist. Clark No. 09-CA-103, 2010-Ohio-2008, ¶ 33, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993).

{¶ 14} In addition, the record supports the trial court's rejection of John's argument that Diane deliberately sought to avoid obtaining a better paid position, content to rely on spousal support. The case law he advances as support for denying "altogether" an award of spousal support to a "voluntarily underemployed" spouse is inapposite. *See Croucher v. Croucher*, 2d Dist. Greene No. 2014-CA-43, 2016-Ohio-726. In *Croucher*, the appellant former husband had a master's degree in business administration, but still was working only part-time nearly five years after being involuntarily let go from his former employment. *Id.* at ¶ 4-6, 17. Mr. Croucher also was not the residential parent of the couple's minor children. *Id.* at ¶ 19. There, we found that the trial court did not abuse its discretion in determining, based on the testimony of a vocational expert, that Mr. Croucher was "voluntarily underemployed." *Id.* at ¶ 17-18. Under the facts of the current case, we find that the trial court did not abuse its discretion in *declining* to find that Diane, who was

employed full-time and had primary day-to-day responsibility for the couple's minor child, was voluntarily underemployed.

{¶ 15} Finding no abuse of discretion in the trial court's assessment of the spousal support issue, we overrule John's first assignment of error.

### Assignment of Error #2 – Child Support

{¶ 16} Like spousal support calculations, calculations of child support are reviewed for an abuse of discretion. *See Payne v. Payne*, 2d Dist. Montgomery No. 27584, 2017-Ohio-8912, ¶ 6, citing *Abrams v. Abrams*, 2d Dist. Montgomery No. 27345, 2017-Ohio-4319, ¶ 39.

{¶ 17} The Ohio Revised Code provides a basic child support schedule and a child support computation worksheet to be used when calculating the amount of child support to be paid pursuant to a child support order. R.C. 3119.021 and R.C. 3119.022. The basic child support schedule and computation worksheet apply when the parents' combined gross income is between $6,600 and $150,000 per year. As to combined incomes exceeding $150,000, the applicable statute provides in pertinent part as follows:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable

worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings.

R.C. 3119.04(B).

{¶ 18} "The starting point [for calculating child support] is parental income: either gross income (for those employed to full capacity) or gross income plus potential income (for those not employed to full capacity)." *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 11, citing R.C. 3119.01(C)(5). Factors to be considered in determining what a voluntarily-underemployed parent would earn if fully employed include:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being

calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(11)(a).

{¶ 19} As he did with respect to the trial court's spousal support award, John contends that the trial court erred by failing to impute to Diane the additional potential income to which the vocational expert testified. Having concluded above that the trial court did not abuse its discretion by failing to find that Diane was voluntarily underemployed, however, we likewise find no abuse of discretion in the trial court's failure to impute additional income to Diane in calculating the child support award for their daughter.

{¶ 20} John's second assignment of error is overruled.

### *Assignment of Error #3 –Wife's Early 2017 Earnings*

{¶ 21} John argues that the trial court erred by refusing to designate as marital property Diane's earnings for the first half of 2017, while the parties were cohabiting. During her hearing testimony, Diane confirmed that she did not contribute to the joint household expenses from January through June 2017, but instead had her paychecks from that timespan deposited directly into a bank account in her name alone. (Tr., Vol. I, pp. 127-128, 131-132, 133, 134-137). When John's attorney attempted to pursue further John's "request for reimbursement of [Diane's] income from January through June of 2017, because she was depositing all of her earnings into a separate account," the trial court refused to permit that line of inquiry to continue. (See *id.*, pp. 151-153). After alluding

to placing a value on "the clothes [Diane] washed, and the dishes she did, and the shopping she did, and all those things that we know stay-at-home parents do for the household," the court asserted that John's request for half of Diane's earnings was

a waste of your time and my time, and I have never heard of anybody trying to get half of somebody's salary for a time when they were together. I mean, I guess [Diane's] * * * counsel would agree, that if you want to turn over half of [John's] salary, they'll turn over half of hers for that same period of time.

(*Id.*, p. 152).

{¶ 22} In the final judgment entry, the trial court expressly denied John's request for reimbursement from Diane's earnings during that period. (Doc. #103, Final Judgment and Decree of Divorce, p. 6). Although acknowledging that Diane's testimony confirmed that John "paid the mortgage, groceries, auto loan, utilities, and insurance during these months," the court cited to its March 24, 2017 order directing the parties "to continue paying household bills as customary during the marriage," and concluded "that it was customary during the marriage for [John] to pay the household expenses." (*Id.*).

{¶ 23} We review property distributions in divorce proceedings for an abuse of discretion. *Payne*, 2d Dist. Montgomery No. 27584, 2017-Ohio-8912, at ¶ 6, citing *Loughman v. Loughman*, 2d Dist. Montgomery No. 25835, 2014-Ohio-2449, ¶ 22. Under R.C. 3105.171(A)(3)(a), "* * * wages paid during the marriage are marital property." *McKenzie v. McKenzie*, 2d Dist. Greene No. 2006-CA-34, 2006-Ohio-6841, ¶ 15. To the extent that deposits into Diane's individual bank account represented her earnings from substitute teaching between January and June 2017, while the parties remained in the same household, those earnings do constitute marital property.

{¶ 24} That conclusion does not end our analysis, however. On February 16, 2018 – prior to the hearing date – the parties filed certain joint stipulations with the trial court. (*See* Doc. #92). Among those, under the heading "Financial Accounts," was this stipulation: "Wife has an individual account with Wright-Patterson Credit Union and shall retain that account *free of any claim by Husband.*" (Emphasis added.) (*Id.*, p. 3). John thereby waived "any claim" against Diane's individual bank account, including her earnings deposited into that account while the parties still resided together. That alone warrants overruling John's third assignment of error.

{¶ 25} Irrespective of that stipulation, the record does not establish that the trial court abused its discretion in refusing to distribute one-half of Diane's early 2017 earnings to John. While the division of marital property generally "shall be equal," there are exceptions. R.C. 3105.171(C)(1). "If an equal division of the marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." *Id.*

{¶ 26} In refusing to award half of Diane's January through June 2017 earnings to John, the trial court specified that "[t]he monthly household expenses listed on the parties' Affidavits exceed [Diane's] annual income," and thus concluded that "it was customary during the marriage for [John] to pay the household expenses." (Doc. #103, Final Judgment and Decree of Divorce, p. 6). Given the parties' income disparity and the trial court's additional allusion to the value of the services Diane provided to the household (*see* Tr., Vol. I, p. 152), we cannot conclude that the trial court abused its discretion by determining that allowing Diane to retain all of her nominal earnings from the first half of 2017 would be more equitable than requiring her to share that amount equally with John.

**{¶ 27}** John's third assignment of error is overruled.

### Assignment of Error #4 – Attorney's Fees

**{¶ 28}** Pursuant to R.C. 3105.73(A), the court in a divorce action "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether such an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.* An award of attorney's fees is committed to the sound discretion of the trial court, and will not be disturbed absent a clear abuse of discretion. *Ulliman v. Ulliman*, 2d Dist. Montgomery No. 22560, 2008-Ohio-3876, ¶ 24, citing *Layne v. Layne*, 83 Ohio App.3d 559, 568, 615 N.E.2d 332 (2d Dist.1992).

**{¶ 29}** At the hearing, Diane produced copies of her fee agreement with her attorney and itemized billing statements recording the time expended by her attorney on this matter. (*See* Tr., Vol. I, pp. 117-120). She also presented the expert testimony of an attorney who regularly practices in the Greene County Domestic Relations Court and who opined that the $275 hourly rate and the total of about $30,000 in fees charged by Diane's attorney were reasonable and necessary. (*See* Tr., Vol. II, pp. 7-11). Moreover, John did not contest the reasonableness or necessity of the fees charged. (*Id.*, p. 12).[3] His challenge thus is limited to the requirement that he pay $20,000 of those fees.

**{¶ 30}** Upon review, we find nothing to suggest that the trial court abused its

---

[3] Given the opportunity to cross-examine Diane's attorney's fees expert, John's attorney stated, "I don't think that we have an issue with the amount necessarily of the fees or [Diane's attorney]'s hourly rate * * * so much as the equity of requesting a full reimbursement of fees."

discretion by requiring John to pay that portion of Diane's attorney's fees. Although Diane had requested that John cover the *full* amount of her fees (*see* Tr., Vol. I, pp. 160-61), the trial court awarded her only about two-thirds of the requested amount. In so doing, the court stated, "Taking into account the fees incurred by both parties during the litigation, the Court finds it reasonable and necessary for [John] to pay $20,000 of [Diane's] attorney fees." (Doc. #103, p. 12). As detailed above, the court elsewhere made findings regarding the parties' income disparity, which was a relevant factor for the court to consider in making a fee award. R.C. 3105.73(A). Moreover, the record reflects that John "switch[ed] attorneys" during the divorce proceedings (Tr., Vol. I, p .168), "conduct" that the trial court could have considered as likely to have contributed to an increase in the amount of Diane's attorney's fees. *See* R.C. 3105.73(A).

**{¶ 31}** While John contends that the trial court erred by failing to recognize that "there's really not much of a discrepancy" in the parties' relative incomes if John's child and spousal support payments to Diane and Diane's "potential income" are included in the calculation, we already have determined that the trial court did not err by failing to consider Diane's "potential income" for the purpose of calculating spousal and child support. That determination applies as to this issue as well. Additionally, for purposes of calculating child support, "Ohio appellate courts have held that spousal support paid from one party to the other party * * * is not to be considered as gross income," (Citations omitted.) *Goffinet v. Goffinet*, 12th Dist. Butler Nos. CA94-11-197, CA95-02-028, 1996 WL 19287, *2 (Jan. 22, 1996), and a trial court also "may not consider as income the amount of child support a residential part receives from the nonresidential parent." *Calvaruso v. Calvaruso*, 9th Dist. Summit No. 21392, 2003-Ohio-4906, ¶12. *See* R.C.

3119.23(C) ("[o]ther court-order payments" to be excluded from child support calculation). Given that spousal support and child support payments are excluded for that purpose, we cannot say that the trial court abused its discretion by failing to consider such payments for purposes of awarding attorney's fees in the parties' divorce action.

{¶ 32} Lastly, John suggests that the trial court erred by prohibiting him from inquiring into whether Diane's attorney's fees already had been paid, and by whom, information that John deems relevant to the issue of whether Diane was able to pay her own fees. We do not agree. The trial court sustained an objection to the relevancy of one cross-examination question asking Diane to show where "payment to your attorneys [for fees] were [sic] reflected" (Tr., Vol. I, p. 161). The court did not abuse its discretion in so ruling.

{¶ 33} John's fourth assignment of error is overruled.

### Assignment of Error #5 – Due Process

{¶ 34} In his final assignment of error, John raises a due process challenge to the manner in which the trial court conducted the February 18, 2018 hearing. He argues that the trial court denied him procedural due process by "stymie[ing] [John] from inquiring into contested issues on a number of occasions," which he details in his appellate brief.

{¶ 35} "The due process clause of the Fourteenth Amendment requires an opportunity to be heard before an impartial observer, and provides the right to confront and cross-examine witnesses prior to the deprivation of life, liberty, or property interest." *Hall v. Hall*, 2017-Ohio-580, 85 N.E.3d 244, ¶ 16 (5th Dist.), citing *Shimko v. Lobe*, 124 Ohio App.3d 336, 706 N.E.2d 354 (10th Dist.1997). That right attaches in divorce proceedings. *See, e.g., Council v. Council*, 2d Dist. Montgomery No. 23514, 2010-Ohio-

3445, ¶ 29. A party may be denied due process when the parties are "given different degrees of latitude to develop testimony * * *" regarding the matters at issue. *Hall* at ¶ 18, citing *Cohen v. Cohen*, 5th Dist. Fairfield No. 99CA52, 2001 WL 61081 (Jan. 22, 2001).

**{¶ 36}** We find no merit to the due process challenge. "Trial courts are given great deference in controlling their dockets." *Matthewson v. Matthewson*, 2d Dist. Greene No. 05-CA-035, 2007-Ohio-574, ¶ 26, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Indeed, Evid.R. 611(A) expressly authorizes trial courts to "exercise reasonable control over the mode * * * of interrogating witnesses and presenting evidence so as to * * * avoid needless consumption of time." *Id.*

**{¶ 37}** "[I]t is well-established that the admission or exclusion of relevant evidence rests within the trial court's sound discretion." *Heath v. Heath*, 12th Dist. Fayette No. CA2016-08-011, 2017-Ohio-5506, ¶ 24, citing *Fox v. Fox*, 12th Dist. Clermont No. CA2013-08-066, 2014-Ohio-1887, ¶ 13. A trial court does not err by excluding irrelevant evidence, nor may an error be predicated on the exclusion of evidence that the proponent failed to proffer. *See Day, Ketterer, Raley, Wright & Rybolt, Ltd. v. Hamrick*, 5th Dist. Stark No. 2002CA0043, 2002-Ohio-5493, ¶ 29. There also is no error in a trial court's exclusion of evidence that is "merely cumulative." *See Ross v. Ross*, 4th Dist. Jackson No. 507, 1985 WL 9387, *2 (Jul. 10, 1985). Moreover, to constitute error, the exclusion of evidence must affect "a substantial right of the party." *Heath* at ¶ 26, citing Evid.R. 103(A)(2); *see also First Natl. Bank of Pandora v. Plott*, 6th Dist. Wood No. WD-95-096, 1996 WL 465396, at *7 (Aug. 16, 1996) ("appellant's due process rights were not violated [where] she suffered no prejudice from the exclusion of evidence * * *").

**{¶ 38}** None of the examples cited by John constitute an abuse of the trial court's

discretion regarding the admission of evidence. Given our determinations above, the trial court did not err by refusing to allow John to adduce evidence about earnings deposited into Diane's bank account that John had stipulated was to be treated as her separate property, or by refusing to allow John to question Diane about payment of her attorney's fees. Absent a proffer of evidence regarding Diane's alleged conduct during a settlement conference, we also cannot conclude on this record that the court erred by excluding such evidence. *See Day, Ketterer, Raley, Wright & Rybolt, Ltd.* at ¶ 29. While the trial court rebuffed John's attempt to offer his own testimony on the topic of Diane's alleged "underemployment," the record already contained the testimony of John's expert witness, as well as his counsel's cross-examination of Diane. Any testimony from John on that subject would have been redundant, and excluding it was not an abuse of discretion. Notwithstanding the trial court's acknowledgment about "taking over" questioning of witnesses (*see* Tr., Vol. I, p. 203), the trial did not so curtail John's ability to present evidence as to create an incomplete record, to John's prejudice. And, again, without a proffer, we cannot conclude on the record that John was prejudiced.

{¶ 39} John's fifth assignment of error is overruled.

### Conclusion

{¶ 40} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Michelle M. Maciorowski

Keri E. Farley
Hon. Steven L. Hurley