[Cite as *Johnson v. Johnson*, 2019-Ohio-1024.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| JENNIFER L. JOHNSON | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-36 |
| | : | |
| v. | : | Trial Court Case No. 2016-DR-171 |
| | : | |
| DAVID L. JOHNSON | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2019.

. . . . . . . . . .

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 North Detroit Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

DAVID L. JOHNSON, P.O. Box 364, Fairborn, Ohio 45324
    Defendant-Appellant, Pro Se

. . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** David L. Johnson appeals a final judgment and decree of divorce entered by the Greene County Common Pleas Court, Domestic Relations Division. The judgment of the trial court will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings.

*Factual Background and Procedural History*

**{¶ 2}** David L. Johnson ("David") and Jennifer L. Johnson ("Jennifer) were married on October 20, 2001, and are the parents of two minor children. Since 2001, Jennifer has worked for United Healthcare, where she is paid an annual salary plus occasional bonuses. David has been self-employed since 2001 as the sole proprietor of a computer repair and custom computer building business. Jennifer filed a complaint for divorce on July 29, 2016. The parties agreed to use June 28, 2016, the date that David vacated the marital residence, as the date of their separation for purposes of the division of property.

**{¶ 3}** A hearing to determine the parties' respective incomes and to identify and categorize their assets and liabilities took place before the trial court over three dates: June 27, 2017; August 22, 2017; and October 24, 2017. On August 2, 2018, the court issued a final judgment and decree of divorce that incorporated the parties' agreement regarding custody and parenting time, then set forth the court's determinations regarding the payment of child support and spousal support, the division of the parties' assets and liabilities, and the allocation of attorneys' fees and costs.

**{¶ 4}** David's pro se appeal from that judgment raises 13 assignments of error:

1) [The trial court] abused [its] discretion and acted contrary to the law
   when [it] ruled that [David] must pay [Jennifer]'s attorney's fees when

[Jennifer] did not seek attorney's fees at the final hearing.

2) [The trial court] abused [its] discretion and did not provide an equitable award of attorney fees.

3) [The trial court] erred when [it] did not give [David] credit for the $750 he paid [Jennifer] for attorney fees.

4) [The trial court]'s ruling that [David]'s attitude and behavior were responsible for 100% of [Jennifer]'s attorney fees is against the manifest weight of evidence.

5) After ruling that [Jennifer]'s credit card bills went 100% with the joint marital home, [the trial court] erred and abused [its] discretion when [it] did not use this liability in calculation [sic] the parties['] equity in the marital home.

6) [The trial court]'s ruling that [Jennifer]'s credit card bills went 100% with the joint marital home is against the manifest weight of evidence.

7) [The trial court] acted contrary to ORC 3119 when [it] calculated [David]'s income using his gross self employment profit instead of his net self employment income.

8) [The trial court] made a mathematical error in calculating [David]'s annual income for the purposes of the divorce calculations. $1,200 per month x 12 months is $14,400 not $24,000. Therefore, [the trial court] erred in [its] follow on [sic] calculations that used the wrong number for [David]'s annual income.

9) [The trial court] erred when [it] did not rule on [David]'s $6,000

inheritance and the equitable division of [Jennifer]'s Morgan Stanley account which had a balance of $1,933 on the date of separation.

10) [The trial court] erred when [it] ruled that $1,500 of [Jennifer]'s 401K account, $300 of [Jennifer]'s ESSP[1] account, and $1,744.43.43 [sic] of [Jennifer]'s roll[-]over IRA account are separate property due to pre-marital contributions.

11) [The trial court] erred when [it] did not provide an equitable distribution of the parties['] 2016 Federal tax refunds.

12) [The trial court] both erred and abused [its] discretion when [it] allowed credit card payments of $3,885, made after the date of separation by [Jennifer] on her personal credit cards, to be assessed against [David].

13) The total credit card balances of $38,204.72 on the date of separation are inconsistent with exhibits and testimony.

### *ANALYSIS*

**{¶ 5}** For ease of analysis, we have grouped David's 13 assignments of error into four broad categories: 1) challenges to the trial court's classification of property as marital or separate property (Assignments of Error #9-10); 2) challenges to the trial court's allocation and/or distribution of assets and liabilities (Assignments of Error #5-6, #11-13); 3) challenges to the trial court's calculation of David's income (Assignments of Error #7-8); and 4) challenges to the trial court's allocation of attorney's fees (Assignments of Error #1-4).

---

[1] Presumably this refers to Jennifer's Employee Stock Purchase Plan, or "ES**P**P," account. (*See* 6/27/16 Hearing Tr., p. 183).

### *Assignments of Error #9, 10 – Marital versus Separate Property*

{¶ 6} In his tenth assignment of error, David challenges the trial court's decision to treat as Jennifer's separate property certain amounts held in accounts in Jennifer's name. Specifically, David urges that the trial court erred by accepting without corroboration Jennifer's testimony that $1,500 in her 401(k) retirement account, $300 in her ESPP[2] account, and the entire $1,744.43 balance of her roll-over individual retirement account ("IRA") represented contributions she made to those accounts before she and David were married. Similarly, David's ninth assignment of error asserts that the trial erred by failing to rule on whether $6,000 that David deposited into Jennifer's checking account was David's separate property inherited from his "Aunt Becky," and whether $1,932.79 held in Jennifer's Morgan Stanley account was marital property that should have been divided with David. Because these assignments implicate the same standard of review and the same legal principles governing the division of property, we will address them together.

*a. Standard of Review*

{¶ 7} "A trial court has broad discretion when dividing marital property." *Williams v. Williams*, 2018-Ohio-611, 106 N.E.3d 317, ¶ 7 (2d Dist.), citing *Bisker v. Blake*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994), citing *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). We review property distributions in divorce proceedings for an abuse of that discretion. *Rucks v. Moore*, 2d Dist. Montgomery No. 27928, 2018-Ohio-4692, ¶ 7, citing *Loughman v. Loughman*, 2d Dist. Montgomery No. 25835, 2014-Ohio-2449, ¶ 22. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219,

---

[2] *See* fn.1, above.

450 N.E.2d 1140 (1983).

{¶ 8} Despite the trial court's broad discretion regarding the division of property, "a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence." *Bakle v. Bakle*, 2d Dist. Greene No. 2009 CA 9, 2009-Ohio-6003, ¶ 16, citing *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345, *6 (Oct. 12, 2001). "When we consider manifest weight arguments, we 'review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof.' " *Id.*, citing *Cooper v. Cooper,* 2d Dist. Greene App. Nos. 2007-CA-76 and 2007-CA-77, 2008-Ohio-4731, ¶ 25; *Howard v. Howard*, 2d Dist. Montgomery No. 16542, 1998 WL 127526 (Mar. 20, 1998).

{¶ 9} "A trial court must indicate the basis for its division of marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law." *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 43, citing *Young v. Young*, 2d Dist. Clark Nos. 08CA59 and 08CA61, 2009-Ohio-3504, ¶ 6, and R.C. 3105.171(G). Additionally, a trial court's failure to consider the factors set forth at R.C. 3105.171(F) to guide the division of marital property is an abuse of discretion. *Mays* at *6.

*b. Law Applicable to Division of Property in Divorce*

{¶ 10} "When dividing married parties' assets and liabilities upon divorce, a court must first determine what is marital property and what is not." *Bergman v. Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715, ¶ 27. The trial court must classify specific property as marital or separate, and where appropriate, must distribute separate property

to the owner. *Id.*, citing R.C. 3105.171(B) and (D). The court's classification must be supported by competent, credible evidence. *Id.*, citing *Mays* at *3; *Renz v. Renz*, 12th Dist. Clermont No. CA2010-05-034, 2011-Ohio-1634, ¶ 17.

{¶ 11} The classification of property is governed by R.C. 3105.171. Per R.C. 3105.171(A)(3)(a), "marital property" includes:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.

{¶ 12} In contrast, under R.C. 3105.171(A)(6)(a), "separate property" is defined, in pertinent part, as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following:"

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage

* * *

(vii) Any gift of real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

{¶ 13} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Additionally, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property. Instead, the couple's total circumstances are reviewed." *Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715, at ¶ 30, quoting *Nuding v. Nuding*, 3d Dist. Mercer No. 10-97-13, 1998 WL 856923 (Dec. 7, 1998). *See also* R.C. 3105.171(H).

{¶ 14} The proponent of a claim that specific property is separate, not marital, bears the burden to prove that claim by a preponderance of the evidence. *Bergman* at ¶ 31, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994); *Snyder v. Snyder*, 2d Dist. Clark No. 2002-CA-6, 2002 WL 1252835, *3. "Oral testimony as evidence, without corroboration, may or may not satisfy the burden." *Bergman* at ¶ 31, quoting *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 23 (2d Dist.). As traceability presents a question of fact, we must defer to the trial court on that issue, "and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent, credible evidence."

*Maloney* at ¶ 23, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶ 15} "Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse." *Bergman* at ¶ 31, quoting *Snyder* at *3, citing *Helton v. Helton*, 114 Ohio App.3d 683, 685, 683 N.E.2d 1157 (2d Dist.1996).

*c. Jennifer's 401(k), ESPP and IRA accounts*

{¶ 16} Jennifer presented evidence that her 401(k) account through Fidelity Investments had a balance of $65,790.59 as of June 30, 2016. (6/27/17 Hearing Tr., p. 180). Although she was unable to obtain records about that account from 2001, she testified that any deposits made to that account from January 2001 (when the account was opened) to October 2001 (when she and David were married) would be pre-marital property, which she estimated to amount to about $1,500.00. (*Id.*, p. 181). David presented no contrary evidence.

{¶ 17} The trial court acted within the scope of its discretion by accepting Jennifer's uncorroborated oral testimony as sufficient proof that $1,500 of the 401(k) account's $65,790.59 balance was Jennifer's separate property. *See Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715, at ¶ 31. We cannot say that the trial court acted unreasonably by crediting to Jennifer as pre-marital property less than 2.3 percent of the balance accumulated in that account over a 16-year period. Because competent, credible evidence supports the trial court's factual determination, we must defer to the trial court on that issue. *Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, at ¶ 23.

David's assignment of error is not well taken as to Jennifer's 401(k) account.

**{¶ 18}** The trial court also did not abuse its discretion by making a similar determination as to Jennifer's ESPP account. Jennifer testified that her ESPP account was opened in January 2001 and that she contributed approximately $300 to that account before the date of her October 2001 marriage. (6/27/17 Hearing Tr., pp. 183-184). She presented evidence that the balance in the ESPP account was $12,568 on June 30, 2016. (*Id.*, p. 184). Although the trial court indicated during the hearing that Jennifer's $300 estimate was "not going to be good enough" (*id.*), it held otherwise in the final judgment entry, finding "that $300 of [Jennifer's] ESPP account is [her] separate property due to pre-marital contributions" she made. (8/2/18 Final Judgment and Decree of Divorce, p. 20).

**{¶ 19}** Again, we cannot say that the trial court acted unreasonably or arbitrarily by determining that less than 2.4 percent of the ESPP's $12,568 balance accumulated over 16 years was Jennifer's separate, pre-marital property. We must defer to the trial court's factual determination, which is supported by competent, credible evidence. *See Bergman* at ¶ 31; *Maloney* at ¶ 23.

**{¶ 20}** Similarly, as to Jennifer's roll-over IRA, she presented evidence that the balance in that account was $1,744.43 when it was rolled over to create a new Fidelity account in July 2016. (6/27/27 Hearing Tr., p. 191). Jennifer testified that the entirety of that balance came from contributions to a 401(k) plan she had through a prior employer, before 1999 and therefore before her marriage. (*Id.*, pp. 186-188). She rolled the original 401(k) plan into a Morgan Stanley account upon leaving that prior employer in 1999, then later rolled the Morgan Stanley account into an account with Fidelity Investments in order

to avoid Morgan Stanley's high fees. (*Id.*, pp. 188-192). Jennifer testified that she made no withdrawals from or contributions to that account after 1999. (*Id.*, pp. 191-193). The trial court credited her testimony, ruling "that the entire balance of the rolled-over Fidelity account is [Jennifer's] separate property." (8/2/18 Final Judgment and Decree of Divorce, p. 21). The trial court did not abuse its discretion in making that factual determination based on competent and undisputed evidence in the record, and we will not disturb the trial court's conclusion. *See Bergman* at ¶ 31; *Maloney* at ¶ 23.

{¶ 21} Our conclusion regarding the trial court's treatment of Jennifer's roll-over IRA also disposes of David's contention that the trial court "did not rule on * * * the equitable division of [Jennifer's] Morgan Stanley account." (Assignment of Error #9). The record demonstrates that the proceeds of Jennifer's Morgan Stanley account were what was "rolled over" to create the Fidelity roll-over IRA that the trial court found to be entirely Jennifer's separate property. (*See* 8/2/18 Final Judgment and Decree of Divorce, p. 21). David's suggestion that the trial court "did not rule on" that issue is mistaken. Furthermore, to the extent that David's argument challenges the discrepancy between the Morgan Stanley account's "balance of $1,933 on the date of separation" (*see* Assignment of Error #9) and the successor Fidelity account's balance of $1,744 cited in the trial court's ruling (*see* 8/2/18 Final Judgment and Decree of Divorce, p. 21),[3] that discrepancy is irrelevant. Regardless of the exact amount in that account on the parties' separation date, the trial court found that none of it was marital property, and David therefore was not entitled to

---

[3] Jennifer explained the lower balance when the account was transferred to Fidelity in July 2016 was "because I was being charged a lot of fees from Morgan Stanley" (6/27/17 Hearing Tr., p. 191) – the very reason she made that transfer. (*See id.* at p. 188).

share in that property. Any error in that regard was harmless, and his allegation of error on that basis is overruled.

*d. David's Inheritance*

**{¶ 22}** David also contends that the trial court erred by failing to address David's claim that $6,000 placed into Jennifer's checking account was David's separate property, derived from $7,031.04 that he inherited "from his Aunt Becky in January 2017."[4] (Brief of Appellant, p. 21). What appears to be the first reference to that purported "inheritance" appears during a discussion about "Defendant's Exhibit A" presented at the June 27, 2017 hearing:

> [David's counsel]: Your Honor, * * * [t]he list that is, that was just handed to you as Exhibit A was the list of property that my client wanted from the home or at least from the marriage. *It includes inherited property.*
>
> This is not a comprehensive list of all the personal property of the parties. This list does not include much of the personal property that my client was willing to forgo and allow his wife to retain.
>
> [Jennifer's counsel]: In regard to the inheritance – inherited property, Your Honor, if I may, it was my understanding that there was some property garnished [sic][5] from a family member; however, that property wasn't garnished [sic] through a will, so *I think calling it inheritance is a very loose definition of the word inheritance.*

---

[4] The testimony David cites indicates that he actually received that money in January 201**6**. (*See* 10/24/17 Hearing Tr., p. 69).

[5] Given the context, it appears that counsel meant the property was acquired or "garnered" from a family member, *not* "garnished" in the legal sense of that word (i.e., seized to settle a debt).

It was a, as a family, everybody went in, took what they wanted and came home with it. There was no specific thing willed or inherited to any individual in this marriage.

(Emphasis added.) (6/27/17 Hearing Tr., pp. 21-22).

{¶ 23} Given the parties' lack of agreement about the division of personal property at that time, the trial court indicated that "we'll reset the matter for a further hearing on this property issue * * *." (*Id.*, p. 25). The court then continued:

And the fact that somebody wants to testify and says this was inherited, isn't going to be enough. That burden will not be satisfied by somebody saying, I inherited this.

I need some evidence, some proof it's in the list of property received from an estate, etc., etc., so enough said on that.

(*Id.*, p. 26).

{¶ 24} When Jennifer testified during the reconvened hearing on August 22, 2017, the following information regarding David's alleged inheritance was elicited:

[David's counsel]: Ma'am, did David contribute to any expenses of the household during the period of time of your accumulation of the credit card debt?

[Jennifer]: During our entire marriage, yes. I mean –

[David's counsel]: In fact, didn't he get money when his Aunt Becky passed away?

[Jennifer]: Yes.

[David's counsel]: And did he contribute that to the marital finances?

[Jennifer]: Yes.

[David's counsel]: And how much was that, do you recall?

[Jennifer]: I do not recall.

* * *

[David's counsel]: (presents Defendant's Exhibit S) Do you recognize that document or those documents?

[Jennifer]: Yes.

[David's counsel]: Is that the, is that check representative of the amount that David got due to the passing of his Aunt Becky?

[Jennifer]: I'm assuming.

[David's counsel]: Do you recall him getting the amount for the passing of his Aunt Becky?

[Jennifer]: Yes, but I don't know what it – I don't recall what it is. So this is what the checks say –

[David's counsel]: And you don't dispute that then?

[Jennifer]: No.

[David's counsel]: Do you see the last page of the second page of that, which is where it went into your account?

[Jennifer]: These did not go into my account. He transferred money into my account.

[David's counsel]: Okay. So the checks, the check itself was not deposited directly in your account. He gave you that money after he deposited it into his account; is that what you're saying?

[Jennifer]: He transferred money to me. These checks were –

* * *

– not deposited to me. So he gave me money, yes.

* * *

[Trial Court]: What's the date on the check?

[Jennifer]: The checks were dated January 22nd of 2016.

* * *

[David's counsel]: And what is the amount of that check?

[Jennifer]: There are two, $4,060.05 and $2,970.99.

[David's counsel]: And how was that money used once it went into your account, ma'am?

[Jennifer]: I would have used it to pay things that needed to be paid.

[David's counsel]: Which would have included day-to-day living expenses or even possibly contributions toward the outstanding debt of the family; is that right?

[Jennifer]: I cannot comment on what it went toward. I – it went toward paying bills. * * *.

(8/22/17 Hearing Tr., pp. 102-106).

{¶ 25} Despite the foregoing testimony, David directs us only to the transcript of the October 24, 2017 hearing, which includes the following discussion regarding the subject of his "inheritance":

[Trial Court]: (to David's counsel) Okay. First of all, anything on the divorce issues that you want another shot at presenting * * *?

[David's counsel]: Yes, Your Honor, I would call David Johnson to the stand again.

[Trial Court]: Okay. This is new information and not something that we have gone over before?

[David's counsel]: * * * [T]here was a $6,000 inheritance that my client received from his aunt who passed away. I don't believe that there was a will involved, and I do remember discussing this to some extent.

[Trial Court]: Let me see what notes I've got.

* * *

[Trial Court]: Inheritance checks, both are dated 1-22-16. One was $4,060.05. The other one was $2,970.99.

* * *

[Trial Court]: Mr. Johnson said he transferred some of the money to Ms. Johnson, and she paid bills with it.

[David]: Well, your Honor, she never paid any credit card bills with it, so I gave her $6,000.00 to pay credit cards [sic] bills. She never paid any credit card bills. She's only paying monthly minimums, if that.

Four months prior to separation, I handed her the checks. Once, again, prior to contemplation of divorce, she talked me into giving her $6,000.

[Trial Court]: The point is, * * * we've been over this issue, and we don't need anymore on it.

(10/24/17 Hearing Tr., pp. 68-70).

**{¶ 26}** Pursuant to R.C. 3015.171(A)(6)(a)(i), "an inheritance is generally considered a party's separate property." *St. Germaine v. St. Germaine*, 2d Dist. Greene No. 2009 CA 28, 2010-Ohio-3656, ¶ 16. However, "spouses can change separate property to marital property based on actions during the marriage." *Helton*, 114 Ohio App.3d 683, 685, 683 N.E.2d 1157. "The most commonly recognized method for effecting this change is through an *inter vivos* gift of the property from the donor spouse to the donee spouse." (Emphasis sic.) *Id.*; *see also Miller v. Miller*, 6th Dist. Sandusky No. S-19-19, 2018-Ohio-5285, ¶ 10 ("Parties can transmute separate property into marital property by means of an inter vivos gift," particularly "where * * * there has been effected a reduction of the parties' joint obligation * * *.").

**{¶ 27}** "The essential elements of an *inter vivos* gift are '(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.' " (Emphasis sic.) *Helton* at 685-686, quoting *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936), paragraph one of the syllabus. Under our jurisprudence, the *donee* bears the burden to show "by clear and convincing evidence that the donor made an *inter vivos* gift." (Emphasis sic.) *Id.* at 686; *accord Snyder v. Snyder*, 2d Dist. Clark No. 2002-CA-6, 2002-Ohio-2781, *3 ("Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse.").

**{¶ 28}** Here, the trial court's final judgment nowhere specifically addresses the issue of David's claimed inheritance. (*See* 8/2/18 Final Judgment and Decree of Divorce, generally and at p. 9, under "Personal Property" heading). Accordingly, while the trial court did not treat the amount of that claimed inheritance as David's "separate property" for purposes of the parties' property distribution, we are unable to discern from the record whether that result was due to an oversight, the trial court's conclusion that the property David received following his aunt's death did not qualify as an "inheritance" within the meaning of R.C. 3015.171(A)(6)(a)(i) (*see* 6/27/17 Hearing Tr., p. 22),[6] the trial court's conclusion that the evidence clearly and convincingly demonstrated that David made an inter vivos gift from that inheritance by transferring $6,000 into a checking account bearing Jennifer's name alone, from which she paid marital bills, or some other reason.

**{¶ 29}** We conclude that the trial court abused its discretion by failing to articulate its reasons, consistent with R.C. 3015.171, for treating the amount of David's claimed inheritance as marital property and not as his separate property. David's ninth assignment of error therefore is sustained only as to that narrow issue, and this matter will be remanded for that limited purpose.

### Assignments of Error #5, 6, 11, 12, 13 – Allocation of Liabilities/Assets

**{¶ 30}** David's assignments of error within the next grouping all raise challenges to the trial court's allocation or distribution of the parties' liabilities and assets. Specifically, David deems "against the manifest weight of the evidence" the trial court's determination that the parties' cumulative credit card debt existing on the date of their separation all

---

[6] There, Jennifer's attorney questioned whether the property David received after Aunt Becky's death fell within the definition of "inheritance," since that property did not pass "through a will."

stemmed from expenditures for improvements to the marital home. (Assignment of Error #5). He also contends that, having made that determination, the trial court further erred and abused its discretion by failing to factor in the amount of that credit card liability when calculating the parties' equity in the marital home (Assignment of Error #6), and by "assess[ing] against" David payments made by Jennifer "on her personal credit cards" after the date of the parties' separation (Assignment of Error #12). Furthermore, David maintains that the total amount the trial court determined to be owed on the parties' credit cards was "inconsistent with exhibits and testimony" (Assignment of Error #13); and that the trial court erred by "not provid[ing] an equitable distribution of the parties['] 2016 Federal tax returns." (Assignment #11).

### a. Standard of Review/Applicable Law

**{¶ 31}** As noted above, we review a trial court's decisions regarding the distribution of property for an abuse of discretion. *Rucks*, 2d Dist. Montgomery No. 27928, 2018-Ohio-4692, at ¶ 7. When considering manifest-weight arguments, we review the evidence to "determine whether, when appropriate deference is given to the factual conclusion[s] of the trial court, the evidence persuades us by the requisite burden of proof." *Bakle*, 2d Dist. Greene No. 2009 CA 9, 2009-Ohio-6003, at ¶ 16. Additionally, the trial court must provide sufficient detail about its property division to allow us "to determine whether the award is fair, equitable, and in accordance with the law." *Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, at ¶ 43.

### b. Assignment #11 - the Parties' 2016 Tax Refunds

**{¶ 32}** The trial court's final judgment stated in pertinent part with regard to the parties' income tax refunds for 2015 and 2016:

The parties each filed Married Filing Separately for tax years 2015 and 2016. [David] requested that he be awarded one-half of [Jennifer's] 2015 tax refund and a portion of [Jennifer's] 2016 tax refund for the part of the year they continued to reside together (January to June 2016). [David] agreed that [Jennifer] was entitled to [the] same from his tax refunds for 2015 and 2016. [Jennifer] admitted on the record that if her income was marital, her refund was also marital.

According to Defendant's Exhibit J, [David]'s 2015 tax return, [David] received a tax refund [that year] of $1,786.00. According to Defendant's Exhibit N, [Jennifer]'s 2015 tax return, [Jennifer] received a refund [that year] of $6,741.00. According to Defendant's Exhibit P, [David]'s 2016 tax return, [David] owed $346 [in 2016]. *No evidence was presented as to [Jennifer]'s tax return from 2016.*

The Court finds that the tax returns [sic][7] for tax year 2015 were marital property. Therefore, each party is entitled to one-half (1/2) of the other's return [sic]. [Jennifer]'s portion of [David]'s return [sic] ($1,786.00 / 2 = $893.00) shall be used to offset the amount [Jennifer] owes [David] ($6,741.00 / 2 = $3,370.50). Accordingly, [Jennifer] is hereby Ordered to pay [David] $2,477.50. * * *

(Emphasis added.) (8/2/18 Final Judgment and Decree of Divorce, pp. 11-12).

**{¶ 33}** David contends that the trial court was mistaken in stating that it had no

---

[7] Presumably the trial court's references in this paragraph to tax "returns" actually were intended to mean tax "refunds."

evidence regarding Jennifer's 2016 tax return. He points to a portion of the record where Jennifer presented into evidence "Plaintiff's Exhibit 49," identified as her "2016 Federal Tax Return." (6/27/17 Hearing Tr., pp. 152-153). David argues that the trial court erred by not awarding him a portion of the refund that Jennifer was to receive for 2016, based on that 2016 return.

**{¶ 34}** David further notes the trial court's specific finding that David owed $346 in taxes for 2016 (*see* 8/2/18 Final Judgment and Decree of Divorce, p. 12), and argues that the trial court should have ordered Jennifer to pay a portion of that marital debt.

**{¶ 35}** Because it appears from the record that the trial court did have evidence of the amount of Jennifer's 2016 federal income tax refund, and that the trial court also failed to direct Jennifer to reimburse David for one-half of that portion of his 2016 income tax owed that was attributable to the months before the parties' separated, David's Assignment of Error #11 is sustained. This matter will be remanded for the limited purpose of having the trial court calculate and award to David the amount representing David's share of Jennifer's 2016 tax refund for the period from January 1, 2016 through their June 28, 2016 separation date, plus Jennifer's share of David's 2016 tax indebtedness from that same period.

*c. Assignments #5, 6, 12 – Allocation of Credit Card Debt*

**{¶ 36}** David contends that the manifest weight of the evidence does not support the trial court's conclusion that all of the parties' credit card debt on their separation date was attributable to expenditures they made as a couple toward the marital residence. (Assignment of Error #6). In related arguments, he urges that the trial court erred by not considering that credit card indebtedness when calculating the parties' equity in the

marital residence (Assignment #5), and by holding David accountable for a share of credit card payments Jennifer made after the parties separated. (Assignment #12).

{¶ 37} On the subject of the parties' credit card debts, the trial court's final judgment stated in part as follows:

The parties purchased the marital residence * * * in February, 2005. [David] gutted the home pursuant to the parties' plans to renovate the three-story dwelling. Both parties testified that they purchased building materials for the home, however the method of purchase is in dispute between the parties. Also in dispute is whether [David] should be responsible for reimbursing [Jennifer] for payments made on the credit cards since the parties physically separated on June 28, 2016.

[Jennifer] testified that the parties used multiple credit cards to pay for the [building] materials[,] which [cards] still carry significant balances, and are currently in [Jennifer]'s name only. [Jennifer] testified that the materials that were not used to renovate the home before the parties separated remain in the marital residence. [David] testified that the majority of the materials were purchased with his own personal credit cards, and some materials were purchased with the equity line of credit and other credit cards. [David] testified that the [four current] credit cards in dispute were used for vacations, dining out, children's expenses, the marital residence, and [David's] business. * * * [Jennifer] is asking the Court to allocate all of the debt to [David] since he retained the renovation materials [by virtue of remaining in the residence], or in the alternative split the debt equally

between the parties. [Jennifer] also asks the Court to Order [David] to reimburse [Jennifer] for her continued monthly payments on the credit card debts since the parties separated in June, 2016. [David] is asking the Court to allocate all of the debt to [Jennifer] because it is separate debt which was not accumulated for home renovations.

[Jennifer] testified that she was not able to obtain credit card statements going back to 2005 when the materials were originally purchased. [She] also testified that the balances have been moved around numerous times [among various credit cards] to avoid paying interest, making it difficult to trace the origins of the current balances. [Jennifer] testified that she managed the finances during the marriage and [she] provided detailed testimony about the credit cards, as well as numerous statements for all four cards [that had outstanding balances on the date the parties separated]. [David]'s testimony disputed [Jennifer]'s claims about the credit cards, but he presented no supporting evidence.

* * *

The Court found [Jennifer] to be a more credible witness throughout the duration of the trial, especially in matters related to finance[s]. The Court also found that [Jennifer] provided evidence to support her testimony about the use of the credit cards. Therefore, the Court finds that the credit card debts [for the four credit cards in dispute] were incurred for the purchase of home renovation materials, and that the debts are marital. Since [David] retained the marital residence and all used and unused renovation

materials, the Court finds it equitable to hold [David] responsible for 100% of the credit card debt. * * *

(8/2/18 Final Judgment and Decree of Divorce, pp. 12-15).

**{¶ 38}** The trial court noted that David had offered evidence showing that Jennifer used one of the four disputed credit cards ("the Upromise card") "for non-balance transfer purposes," but the court nonetheless concluded that David had "fail[ed] to demonstrate that the current [Upromise] balance stems from non-renovation purposes." (*Id.*, pp. 13-14). Instead, the court found the evidence showed that when Jennifer made purchases on that card, those purchases "were paid off the following month. The remaining balance as of the last statement provided shows the balance to be from balance transfers, not purchases." (*Id.*, p. 14).

**{¶ 39}** Giving appropriate deference to the trial court's findings of fact, we cannot conclude that the trial court's decision was against the manifest weight of the evidence. *See Bakle*, 2d Dist. Greene No. 2009 CA 9, 2009-Ohio-6003, at ¶ 16. While David undoubtedly disagrees with the trial court's assessment of the parties' credibility, he has directed us to nothing in the record demonstrating that the court's factual conclusions were objectively wrong. "The trial court was entitled to decide which testimony to credit, since it was in the position to view the witnesses and assess their credibility." *See Edwards v. Edwards*, 2d Dist. Montgomery No. 25309, 2013-Ohio-117, ¶ 40. Moreover, we must defer to the trial court's findings of fact as to the traceability of assets or liabilities, and will not reverse the trial court's decision if "it is supported by competent, credible evidence." *See Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, at ¶ 23.

{¶ 40} Because the trial court detailed evidence, particularly testimony by Jennifer, that supports its conclusion that the parties' earlier purchases of home renovation materials were the source of the credit card debt remaining at the time of their separation, David's sixth assignment of error is overruled.

{¶ 41} In a related argument, David's fifth assignment of error proposes that the amount of the parties' outstanding credit card debt should have been deducted from the value of the marital home when the parties' equity in that property was calculated. He maintains that if the subject credit card debt were incurred for expenses related to the real property, as the trial court found, that debt was "no different" than a home equity loan or a mortgage. In effect, David seeks to have the parties' unsecured credit card debt treated as though it were secured debt. Significantly, he cites no legal authority for that argument.

{¶ 42} David's approach would, as he acknowledges, result in the parties' marital residence having "negative equity" – i.e., David would both keep the house *and* collect a substantial sum from Jennifer for doing so. It fell within the scope of the trial court's broad discretion for the court to decline to apply a "negative equity" approach that would require Jennifer to pay David more than $19,000 simply because she surrendered the house and he retained it. *See Williams*, 2d Dist. No. 2017-CA-47, 2018-Ohio-611, 106 N.E.3d 317, at ¶ 7.

{¶ 43} Additionally, the record shows that some portion of the outstanding credit card debt relates to tangible property possessed by David but not yet affixed as part of the house when the parties separated. As the trial court noted, Jennifer testified that not all of the building materials purchased actually had been installed in the residence by

June 28, 2016. Those unused materials "remain in the marital residence" and were acquired by David. It was neither unreasonable nor arbitrary for the trial court to decide that Jennifer should not be required to pay David for half the value of materials that he might choose to sell or to use to increase the value of a home in which Jennifer no long had any financial interest.[8] David's fifth assignment of error is overruled.

{¶ 44} In his twelfth assignment of error, also related to the issue of credit card debt, David objects to the trial court's order that David reimburse Jennifer for all payments she made toward that debt after the parties separated but before the divorce decree was entered. In the final judgment order, after remarking on the combined balance of the credit card debt as of June 28, 2016, the trial court stated:

> [Jennifer] testified that she made all the [credit card] payments in the [year between the separation date and the June 27, 2017 hearing], totaling $2,548.92. When the parties returned for the second day of trial on August 22, 2017, [Jennifer] presented evidence that she paid an additional $1,335.92 on the credit cards since the first day of trial. [Jennifer] paid a total of $3,884.83 since the physical separation on June 28, 2016. [Jennifer] testified that [David] did not contribute any money towards the payment of the debt, which [David] did not dispute.

(8/2/18 Final Judgment and Decree of Divorce, p. 14). The court then ordered David to reimburse Jennifer for the full amount of her post-separation payments toward the credit card debt. (*Id.*, p. 15).

---

[8] Furthermore, the record contains no evidence distinguishing between the value of the building materials actually installed in the home during the parties' marriage and the value of the unused materials that remain in David's possession.

{¶ 45} David does not dispute the trial court's findings as to the amount of Jennifer's post-separation credit card payments, but argues that he should not be responsible for paying what he characterizes as Jennifer's "personal" credit card debt. The trial court's explicit findings as to the nature of that debt, however, belie David's characterization. Having concluded above that the trial court did not err by attributing all of the parties' credit card debt to the cost of building materials that accrued to David's benefit, we likewise conclude that the court did not err by requiring David to reimburse Jennifer for credit card payments she made toward that debt after the parties' official separation and before the divorce decree was issued. David's twelfth assignment of error is overruled.[9]

*d. Assignment of Error #13 – Calculation of Credit Card Debt*

{¶ 46} David's final assignment of error takes issue with the amount of the parties' outstanding credit card debt as calculated by the trial court. David asserts that the trial court erred by relying on the closing balances shown on statements for each credit card "instead of the actual balance on June 28, 2016." Based on his own calculations, David urges that instead of the $38,204.72 figure cited by the trial court (*see* 8/2/18 Final Judgment and Decree of Divorce, p. 14), the amount due on the four credit card accounts

---

[9] David's secondary argument under this assignment of error, suggesting that Jennifer somehow received "double credit" for the payments in dispute (*see* Brief of Appellant, p. 24), apparently is based on evidence that either is missing from the record or to which David has not directed us. In either event, we decline to address that argument. *See White v. White*, 2d Dist. Clark No. 2013-CA-86, 2014-Ohio-1288, ¶ 8 ("We are not required to comb through the record on appeal to find the parts of the record that bear upon an assignment of error when the party assigning the error has failed to direct our attention to the place in the record demonstrating the error.") and *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E. 500 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

as of June 28, 2016 was $34,732. (Brief of Appellant, p. 25).

{¶ 47} Nothing in the record establishes that the trial court erred as David suggests. Jennifer presented into evidence for each of the four credit cards in dispute the account statement closest in time to the parties' separation date of June 28, 2016. She testified that on July 6, 2016, the balance on the Discover account was $7,005.26 (6/27/27 Hearing Tr., pp. 208-209); on July 4, 2016, the balance on the Bank of America account was $7,217.00 (*id.*, pp. 217-218); on July 6, 2016, the balance on the Upromise account was $11,358.95 (*id.*, p. 221); and on June 21, 2016, the balance on the Chase Slate account was $10,923.00 (*Id.*, pp. 223-224). Those figures total $36,504.20, a number marginally lower than the $38,204.72 reflected in the final judgment (*see* 8/2/18 Final Judgment and Decree of Divorce, p. 14) and marginally higher than the $34,732 David advances. (Brief of Appellant, p. 25).

{¶ 48} Irrespective of those differences, however, we concluded above that the trial court acted within the scope of its discretion in "hold[ing] David responsible for 100% of the credit card debt." (*See* 8/2/18 Final Judgment and Decree of Divorce, p. 15). Significantly, the trial court's actual judgment did not order David to pay a specific amount of credit card debt; rather, it generically "ORDERED [David] to pay the entire balance of the marital credit card debt." (*Id.*). Accordingly, irrespective of the exact amount of that remaining debt, David is responsible for paying all of it. He has directed us to nothing to suggest that any discrepancy among the foregoing amounts is attributable to spending by Jennifer after the separation date that should not be regarded as marital debt. Absent such evidence, the trial court did not err by ordering him to pay the entirety of the parties' remaining credit card debt, whatever that amount may be. His thirteenth assignment of

error is overruled.

### Assignments of Error #7, 8 – Calculation of David's Income

{¶ 49} David's seventh and eighth assignments of error contend that the trial court erred in calculating David's past income and projected future income. As to his future earning potential, David asserts that the trial court "made a mathematical error" in imputing to David an annual income of $24,000. (Assignment of Error #8). As to his past earnings, David urges that the trial court incorrectly considered David's "gross self income profit" instead of his "net self employment income." (Assignment of Error #7).

#### a. Standard of Review/Applicable Law

{¶ 50} A trial court "enjoys broad discretion" with regard to awards of both spousal support and child support. *Blevins v. Blevins*, 2d Dist. Greene No. 20018-CA-23, 2019-Ohio-297, ¶ 8, 47. An abuse of discretion occurs when the trial court's decision regarding support is "unreasonable, arbitrary or unconscionable." *Hagar v. Sabry*, 2d Dist. Montgomery No. 27967, 2018-Ohio-4230, ¶ 10, quoting *Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 51} In determining whether spousal support is appropriate and reasonable, as well as its amount, nature, and duration, a trial court must consider a variety of factors. *Baskin v. Baskin*, 2d Dist. Montgomery No. 27373, 2017-Ohio-7632, ¶ 10. These factors include: 1) the parties' income from all sources; 2) their relative earning abilities; 3) their ages and physical, mental, and emotional conditions; 4) the retirement benefits of the parties; 5) the duration of the marriage; 6) the extent to which it would be inappropriate for a party to seek employment outside the home (particularly if a custodian of a minor child of the marriage); 7) the parties' standard of living during the marriage; 8) their relative

educations; 9) the parties' relative assets and liabilities; 10) the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; 11) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment; 12) the tax consequences, for each party, of an award of spousal support; and 13) the lost income production capacity of either party that resulted from that party's marital responsibilities. R.C. 3105.18(C)(1). The court also may consider any other factor that it expressly finds to be relevant and equitable. R.C. 3105.18(C)(1)(n).

{¶ 52} "When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money [that] a 'person could have earned if he made the effort.' " *Kraft v. Kraft*, 2d Dist. Montgomery No. 25982, 2014-Ohio-4852, ¶ 21, quoting *Miller v. Miller*, 2d Dist. Montgomery No. 14540, 1994 WL 730560, *4 (Dec. 28, 1994). "Because R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential." *Miller* at *4, citing, inter alia, *Frost v. Frost*, 84 Ohio App.3d 699, 618 N.E.2d 198 (10th Dist.1992).

{¶ 53} As to child support, "[t]he Ohio Revised Code provides a basic child support schedule and a child support computation worksheet to be used when calculating the amount of child support to be paid pursuant to a child support order." *Blevins*, 2d Dist. Greene No. 20018-CA-23, 2019-Ohio-297, at ¶ 17, citing R.C. 3119.021 and R.C.

3119.022. The basic child support schedule and computation worksheet apply when the parents' combined gross income is between $6,600 and $150,000 per year.

{¶ 54} As to both spousal support and child support calculations, then, a parent's annual income is a critical starting point.

*b. Assignment of Error #8 – Alleged Mathematical Error*

{¶ 55} In projecting David's annual income for purposes of calculating any support obligations to be imposed, the trial court found "that using an annual income of $24,000 for [David] * * * *($1,200 per month x 12 months)* is reasonable under [David's] current circumstances." (Emphasis added.) (8/2/18 Final Judgment and Decree of Divorce, p. 4). The record demonstrates that the trial court used the $24,000 figure as David's income for purposes of calculating the parties' child support obligations. (*See id.*, attached Child Support Computation Worksheet, p. 1, line 1a and p. 2, line 7a).

{¶ 56} On appeal, David does not oppose the trial court's imputing to him a $1,200 monthly income as "a realist[ic] goal," but he points out that the trial court miscalculated the annual income that would result from monthly earnings in that amount – i.e., "$1,200 a month for 12 month[s] is $14,400 in annual income," not $24,000.

{¶ 57} Given that David's observation is correct,[10] we determine that this matter should be remanded to the trial court to correct that computation error, and to further

---

[10] We do not find persuasive Jennifer's suggestion that the trial court intended to impute to David an annual income of $24,000, with the numbers inside the parentheses being simply "a clerical error" that does not merit reversal. (*See* Brief of Appellee, p. 17). Elsewhere in the final judgment, the trial court proposed the same $1,200 monthly income figure for David. (*See* 8/2/18 Final Judgment and Decree of Divorce, p. 4) (although David "testified that he could earn $1,500 to $2,000 per month" under certain circumstances, "[u]pon questioning by the Court, [David] admitted that $1,200 per month is a more realistic income projection").

determine what revisions, if any, may be warranted in the parties' respective spousal and child support obligations, as well as any other obligations, as a result of David's corrected income figure. David's eighth assignment of error is sustained.

*c. Assignment of Error #7 –Income Figure Used to Calculate Child Support*

**{¶ 58}** David contends that the trial court also erred by calculating David's past income for purposes of child support obligations "using his gross self-employment profit instead of his net self-employment income." According to David, because "gross profits do not include operating expenses," the trial court's approach led to a "large disparity" between David's actual net income for 2011-2014 and the figures used by the trial court to represent David's earnings for those years.

**{¶ 59}** On that topic, the final judgment entry states as follows:

The evidence indicates that [David]'s gross profits [from his computer business] totaled $45,959 in 2011 (Plaintiff's Exhibit 18), $28,164 in 2012 (Plaintiff's Exhibit 19), $22,925 in 2013 (Plaintiff's Exhibit 20), and $16,030 in 2014 (Plaintiff's Exhibit 21). [David]'s income has continued to decline each year since 2011, for which the parties offered differing explanations.

**{¶ 60}** Despite reciting the above numbers as representing David's past earnings, however, the trial court did not rely on those figures in calculating David's support obligations in this case. Instead, as we noted with respect to David's eighth assignment of error, above, the trial court used a projected annual income of $24,000 for David to compute the parties' respective child support obligations. (*See* 8/2/18 Final Judgment and Decree of Divorce, attached Child Support Computation Worksheet, p. 1, line 1a and p. 2, line 7a).

{¶ 61} Pursuant to R.C. 3119.02:

In any action in which a court child support order is issued * * *, the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code. The court * * * shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. In performing its duties under this section, the court or agency is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding.

{¶ 62} Unless the parents' "combined gross income" is less than $6,600 or more than $150,000,[11] child support is to be paid in accordance with the schedule codified at R.C. 3119.021, based on calculations made in accordance with the worksheet found at R.C. 3119.022. The applicable child support computation worksheet includes lines designated specifically for calculating "self-employment income" by deducting "[o]rdinary and necessary business expenses" and other costs from the "[g]ross receipts from business." *Id.*

{¶ 63} Here, however, the trial court did *not* use the numbers it recited as representing David's past income as the basis for calculating his future support obligations. Indeed, the trial court left blank the worksheet section used to compute "self-

---

[11] It is undisputed that the combined gross income of these parties falls within the specified range.

employment income" (*see* 8/2/18 Final Judgment and Decree of Divorce, attached Child Support Computation Worksheet, p. 1, line 2), instead inserting the $24,000 figure as representing David's projected future annual income. (*See id.*, p. 1, line 1a and p. 1, line 7a). Given that any error in the trial court's statements about David's past income[12] had no bearing on its calculations of the parties' future support obligations, any such error was harmless. *See Hoch v. Carr*, 9th Dist. Summit No. 26097, 2012-Ohio-1445, ¶ 7 (trial court's reference to facts not actually used to calculate support obligation was harmless error); *Carpenter v. Carpenter*, 7th Dist. Noble Nos. 11 NO 387, 11 NO 388, 2012-Ohio-4567, ¶ 23 (trial court's error as to income figure used to compute child support is harmless where party suffered no prejudice). *See also Avery v. Avery*, 2d Dist. Greene Nos. 2002 CA 121, 2003 CA 1, 2002 CA 105, 2003-Ohio-4975 (in case for modification of spousal and child support, erroneous admission of evidence was harmless where no reason to believe it "in any way affected the trial court's judgment").

**{¶ 64}** David's seventh assignment of error is overruled.

### *Assignments of Error #1, #2, #3 – Attorney's Fees*

**{¶ 65}** David contends that the trial court erred and/or abused its discretion in three respects as to its award of attorney's fees: 1) by awarding Jennifer fees even though she did not request such fees at the final hearing (Assignment of Error #1); 2) by providing an inequitable award of attorney's fees (Assignment of Error #2); and 3) by failing to credit David for $750 that he already had paid Jennifer for attorney's fees. (Assignment of Error #3).

---

[12] We have not concluded whether the trial court's past-earnings findings were erroneous, as we need not resolve that question in order to rule on this assignment of error.

**{¶ 66}** In awarding attorney's fees to Jennifer, the trial court stated as follows:

[Jennifer] requests that she be awarded attorney fees totaling $23,825.00. [She] presented an expert witness, [an experienced Dayton-area attorney], who testified that the hourly rate and work performed by [Jennifer]'s attorney were reasonable and consistent with local practice.

The Court finds * * * [David]'s attitude and behavior throughout the proceedings to be the main cause for the prolonged litigation of this case. It is apparent to the Court that [David] has been more interested in acting defiantly and with hostility, which eventually culminated in three days of trial. The Court notes that [David] rarely followed through on his assertions that he would provide evidence to support his position on various issues, specifically when it came to lost wages due to lack of transportation and case law supporting his date of separation. Therefore, the Court finds it reasonable to award Plaintiff $23,825.00 in attorney fees. * * *

(8/2/18 Final Judgment and Decree of Divorce, p. 18).

### a. Standard of Review/Applicable Law

**{¶ 67}** A divorce court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(A). In determining whether an award of fees is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.* The decision whether to award attorney fees is within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *Williams*, 2018-Ohio-611, 106 N.E.3d 317,

at ¶ 24, citing *Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, at ¶ 78, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 93.

  *b. Assignment of Error #1 – Failure to Request Fees*

**{¶ 68}** David maintains that the trial court should not have awarded attorney's fees to Jennifer because she "did not seek attorney's fees at the final hearing." Furthermore, he suggests that during the hearing on June 27, 2017, the parties "agreed in open court to pay their own attorney fees for the divorce," so that the trial court abused its discretion by awarding fees despite that agreement.

**{¶ 69}** Notably, David cites no legal authority for the premise that a trial court may not award attorney's fees in a divorce action unless the receiving party made an explicit request for such fees in his or her final hearing before the court. Neither does he cite authority for the notion that a party who indicated an initial willingness to pay his or own fees thereby waives the right to later seek reimbursement of fees if the matter becomes unexpectedly protracted.

**{¶ 70}** Aside from those omissions as to the applicable law, we also do not accept David's characterization of the facts in the record. The transcript from the original hearing date, to which David refers, does record a discussion with the trial court during which the parties' counsel indicated that attorney's fees were not "in dispute" *at that time*, with each party intending to pay his or her own fees. (6/27/17 Hearing Tr., p. 35). By the third hearing date nearly four months later, however, without objection from David, Jennifer presented as an expert witness an attorney who testified to the reasonableness of the hourly rate charged by Jennifer's counsel and the number of hours expended on what the expert termed "a very long divorce case" with "a lot of motions" and hearings, including multiple

motions to show cause filed on Jennifer's behalf. (10/24/17 Hearing Tr., pp. 49-67). The record belies David's suggestion that the expert's testimony was limited to the reasonableness of the fees charged relative to those show cause motions. Rather, the expert testified about the entirety of the billing records of Jennifer's counsel related to this case.

**{¶ 71}** The presentation of that testimony during the final hearing conveyed Jennifer's desire to recover attorney's fees, and thus also controverts David's statement that Jennifer "did not seek attorney's fees at the final hearing." Moreover, the trial court at that time communicated its intent to consider awarding fees to Jennifer. Responding to an objection from David's counsel to the relevance and accuracy of the attorney's fees exhibit proffered by Jennifer, the court stated:

> Relevance is certainly not a reason to object. I mean, I've got a request for attorney fees in the original complaint for divorce, I believe.
>
> The statute provides that I can award attorney fees at any point in the proceedings * * *
>
> * * *
>
> [As to accuracy], I'm satisfied with the witness's testimony, and I did the math myself as far as what the hourly rates are based upon the charge and the time involved.
>
> * * *
>
> So I'm satisfied * * *, so I'll overrule that objection. It will be admitted, and *I will take into account all the relevant issues when awarding attorney fees* and make a decision on that one.

(Emphasis added.) (*Id.*, pp. 109-111).

{¶ 72} As David's first assignment is supported by neither the facts nor the applicable law, it is overruled.

*c. Assignment of Error #2 – Equitableness of Fee Award*

{¶ 73} David next contends that the fee award to Jennifer was not "equitable" in light of the parties' significant income discrepancy. While Jennifer's higher earnings are one factor that the trial court was to consider in making a fee award under R.C. 3105.73(A), "the conduct of the parties" is an equally important consideration under that statute. Here, the trial court unequivocally expressed its view that David's "attitude and behavior throughout the proceedings" was the primary reason that the expense of the parties' attorneys became so high. (8/2/18 Final Judgment and Decree of Divorce, p. 18). Because the record supports the trial court's conclusion that David engaged in blatantly obstructive behavior, we defer to the trial court's assessment of David's "defian[ce]" and "hostility" as warranting a fee award to Jennifer. *See Williams*, 2018-Ohio-611, 106 N.E.3d 317, at ¶ 29 (affirming fee award as "supported by the trial court's finding that [one former spouse] caused [the other former spouse] to incur unnecessary attorney fees").

{¶ 74} In light of the trial court's findings, we cannot say that the trial court abused its discretion in ordering David to pay Jennifer's fees in the amount of $23,825.00, and David's second assignment of error is overruled.

*d. Assignment of Error #3 – Failure to Credit Prior Fee Payment*

{¶ 75} Finally, David argues that the trial court erred by failing to credit him for $750 that he previously paid to Jennifer toward her attorney's fees. The record does contain a document in which David professes to have paid Jennifer that amount by check (from

David's father) dated May 25, 2017, "as reimbursement of [Jennifer's] legal fees for the contempt filing." (Trial Court Docket #77). He argues that no credit for that payment appeared on the attorney's fees exhibit admitted into evidence since the payment was made to Jennifer directly rather than to her attorney.

{¶ 76} It appears that the trial court may not have taken that alleged payment into consideration in making its award of attorney's fees. Accordingly, David's third assignment of error is sustained, and the matter will be remanded in order for the trial court to consider whether David is due a credit in the amount of $750 toward the total attorney fee award.

### *Conclusion*

{¶ 77} The trial court's judgment will be reversed: 1) as to the order for distribution of property, for failing to articulate, consistent with R.C. 3015.171, why David's claimed inheritance was regarded as marital property and not as David's separate property; 2) as to the order regarding tax refunds/liabilities, for failing to order Jennifer to pay David both one-half of that portion of Jennifer's federal income tax refund for 2016 attributable to the months before the parties separated *and* one-half of that portion of David's $346 federal income tax liability for 2016 attributable to the months before the parties separated; 3) as to the orders for spousal support and child support, to accurately reflect the amount of David's imputed annual income, and to make any corresponding changes warranted in the amount of spousal support and/or child support to be paid; and 4) as to the award of attorney's fees, for failing to address whether David should have been credited for a $750 payment previously made to Jennifer.

{¶ 78} This matter will be remanded for the limited purpose of addressing the

foregoing four issues. The judgment will be affirmed in all other respects.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Jay A. Adams
David L. Johnson
Hon. Steven L. Hurley