[Cite as *Favri v. Favri*, 2021-Ohio-3588.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
CARROLL COUNTY

YVONNE E. FAVRI,

Plaintiff-Appellant,

v.

DAVID E. FAVRI,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CA 0945**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Carroll County, Ohio
Case No. 2019DRB29317

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed in part.
Remanded.

---

*Atty. Jeffrey V. Hawkins*, One Cascade Plaza, Suite 2210, Akron, Ohio 44308, for Plaintiff-Appellant

*Atty. Maureen E. Stoneman*, 63 Second St., SW, P.O. Box 326, Carrollton, Ohio 44615, for Defendant-Appellee

Dated:  September 30, 2021

**WAITE, J.**

{¶1}   Appellant Yvonne E. Favri appeals a September 16, 2020 Carroll County divorce decree.  Appellant argues the trial court erroneously determined that certain real estate and personal items were separate property belonging to her ex-husband, Appellee David E. Favri.  Appellant also argues the court erred in its determination regarding Appellee's yearly income and in failing to award her attorney fees.  The record reveals that the trial court did fail to consider relevant evidence as to whether a real estate parcel called the Canton Road property was actually marital property.  However, the remainder of Appellant's arguments are without merit.  Accordingly, the matter is remanded for the purpose of determining whether comingling occurred sufficient to transform the Canton Road property into marital property.  The remainder of the trial court's judgment is affirmed.

## Procedural and Factual History

{¶2}   Appellant and Appellee were married on June 17, 1994.  Prior to the marriage, Appellee built and owned a house referred to as the "Mohawk property."  After the marriage, Appellant moved into the Mohawk property.  Sometime thereafter, the parties sold this property and used the proceeds to jointly purchase property on Chase Road.

{¶3}   While the couple lived on Chase Road, Appellee's mother suffered a stroke.  She testified that she was concerned her children could lose their inheritance, so she gifted Appellee property on Canton Road that had been in their family since 1949 as an

early inheritance. She promised the property on where she was currently residing to her daughter after her death. Thus, only Appellee received his mother's early inheritance; his sister was required to wait until her mother's death to receive her portion of the inheritance. The parties subsequently moved into the Canton Road property.

{¶4} Appellee's mother also gifted him two certificates of deposit ("CDs"). According to Appellee and his mother, these CDs were gifted to Appellee in the eighties or nineties. Paperwork admitted into evidence showed the CDs were opened at PNC Bank on July 2, 1994 and December 19, 2009. Appellee testified these CDs were purchased at a different bank that was eventually bought out by PNC Bank. Thus, according to Appellee, the dates on the paperwork did not reflect the true purchase date, but rather, the date those CDs were transferred to PNC Bank. Appellee testified that he could not locate the original paperwork for the CDs showing the actual date they were opened, and he did not present any other evidence in support.

{¶5} In April of 2019, Appellee informed Appellant of his intent to seek a divorce. According to Appellee, he left Canton Road and set up a temporary residence in a trailer or camper. While he believed the Canton Road property belonged solely to him, he testified that he allowed Appellant to remain in the house until she could secure other living arrangements.

{¶6} On May 31, 2019, Appellant filed a complaint for divorce without children. As she believed the Canton Road house was marital property, she filed a temporary order requesting exclusive possession of the Canton Road property, spousal support, and payment of all monthly debt. According to her affidavit, she received only disability social security while Appellee owned a plumbing business.

{¶7}  On June 24, 2019, Appellee filed an answer and counterclaim.  He also filed several additional motions, including a motion requesting exclusive possession of the Canton Road property and a motion seeking a restraining order against Appellant.  Appellee requested an emergency hearing regarding the Canton Road property, as he learned that Appellant had sprayed oil on his clothing, family heirlooms, and furniture.

{¶8}  On June 25, 2019, the trial court granted Appellee's motion for a restraining order.  On July 16, 2019, the court granted exclusive possession of the Canton Road property to Appellee, providing Appellant until September 1, 2019 to obtain other living arrangements.  Appellee was granted permission to inspect the property prior to Appellant's move out date.  Appellee agreed to pay Appellant's moving costs.

{¶9}  On September 11, 2019, Appellee filed a motion to show cause.  According to Appellee, Appellant denied him access to inspect the property before her move-out date.  He also claimed that Appellant had visited the trailer where he had been living and entered without his permission, removing several of his possessions from the trailer.  Appellee also claimed that Appellant had removed personal items from Canton Road that were not in the parties' agreement.  Finally, Appellee claimed that Appellant had created an online banking account that included his individual checking account and had removed $250 without his knowledge or consent.

{¶10}  The court addressed these various motions in a series of judgment entries.  On September 17, 2019, the trial court ordered Appellee to pay Appellant $1,170 in monthly spousal support.  On October 3, 2019, the court ordered Appellant to return any personal property she had removed from either the Canton Road house or Appellee's trailer.  The court also ordered her to refund Appellee $750 of the moving costs and return

the $250 she removed from his bank account. On February 11, 2020, the court ordered Appellee to transfer $2,750 that had been held in trust to Appellant. This payment involved funds received from the sale of certain marital property.

{¶11} On August 28, 2020, the matter proceeded to a bench trial. Three witnesses testified at trial: Appellant, Appellee, and Appellee's mother. Appellant's expert witness, Davis & Co., prepared a report analyzing Appellee's yearly income. Appellee stipulated that the report contained the same information to which the witness would have testified in an effort to limit the number of live witnesses; however, he expressly disagreed with its conclusions for the record.

{¶12} On September 16, 2020, the court entered a divorce decree. Of relevance to the instant appeal, the court determined the two CDs and the Canton Road property gifted by his mother were the separate property of Appellee. The court determined that life insurance proceeds for which Appellant was the sole beneficiary had been used to pay the parties' joint bills and had been depleted. The court determined that Appellee's yearly income was $55,000 and awarded Appellant spousal support in the amount of $1,200 per month for a period of seven and one-half years. The court granted Appellant's motion for a stay pending appeal and ordered the parties to adhere to the temporary orders until the conclusion of this process.

Non-Conforming Brief

{¶13} Preliminarily, we note that Appellant's brief is non-conforming. App.R. 16(2) requires "[a] table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited." While her brief provides the names of three cases, Appellant has not provided any other mechanism to allow this Court to

locate these cases.  Only one of the three provides a partial cite, the remaining two cases include only the case name, district number, and what appears to be an appellate case number.

{¶14} Additionally, App.R. 16(7) requires "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  Appellant makes a passing reference to three case names, but does not provide any discussion of the relevant law.  Instead, the "assignments of error," which are limited to a few sentences each, merely contain a few facts without analysis.

{¶15} Notwithstanding these deficiencies and in the interest of fairness and justice, we will attempt to interpret Appellant's arguments intended by her assignments and to address the relevant law.

## Standard of Review

{¶16} An award of spousal support is within the sound discretion of the trial court. *Waller v. Waller*, 7th Dist. Jefferson No. 04 JE 27, 163 Ohio App.3d 303, 2005-Ohio-4891, 837 N.E.2d 843, ¶ 40, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990).  However, this discretion is not unlimited and is governed in large part by the spousal-support statute, R.C. 3105.18.  Within the limits provided by statute, a trial court is granted broad discretion to determine an equitable award under the facts and circumstances of each case.  *Waller* at ¶ 60, citing *Kunkle* at 67.  "An abuse of discretion is more than an error of judgment; it requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable."  *State v. Nuby*, 7th Dist. No. 16 MA 0036,

2016-Ohio-8157, ¶ 10, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

## ASSIGNMENT OF ERROR NO. 1

The Court erred and abused its discretion in its evaluation of marital equity of the two (2) parcels of real estate identified during the course of trial.

{¶17} The main focus of Appellant's argument centers on the Canton Road property. Appellant acknowledges both Appellee and his mother testified that the property was intended as a gift to Appellee, alone. However, Appellant argues that Appellee did not present clear and convincing evidence to rebut the presumption that gifts made during the course of a marriage constitute marital property. Appellant cites to a joint line of credit taken on the property, which suggests joint ownership in the parcel. Appellant also argues that the proceeds of the sale of the parties' Chase Road property, which was clearly jointly owned, were used to improve the Canton Road property.

{¶18} In response, Appellee asserts that his mother gifted him the Canton Road property as an early inheritance after she suffered a stroke. Appellee argues that his mother intended to gift the property to him, alone, as evidenced by the fact that she omitted Appellant's name from the deed. Appellee concedes that Huntington Bank required him to add Appellant's name to an equity line of credit used to improve the property, however, he argues that this did not affect the separate nature of the property. Appellee also concedes that proceeds from the sale of marital property were used to improve the Canton Road property. However, he argues that this does not entitle Appellant to joint ownership of the property. Instead, he argues that the use of the marital

proceeds can be separated from the value of the property as a whole. Thus, he contends that Appellant is entitled to only one-half of the increased value resulting from the use of marital funds.

{¶19} R.C. 3105.171 defines both marital and separate property. According to R.C. 3105.171(A)(3)(a) marital property includes:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

{¶20} In relevant part, R.C. 3105.171(A)(6)(a)-(b) defines separate property as:

(a)(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

\* \* \*

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

**{¶21}** In his argument here, Appellee attempts to merge the principles contained in subsections (i), (vii), and (b). Subsection (a) addresses the scenarios that render property "separate," whereas subsection (b) addresses the commingling of property and the standard used to determine whether separate property has been transformed into marital property. While each subsection is relevant, here, each contains different standards and do not form one single analysis.

**{¶22}** R.C. 3105.171(vii) requires clear and convincing evidence. Clear and convincing evidence is that level of proof which causes the trier of fact to develop a firm belief or conviction on the facts sought to be established. *Matter of E.K.*, 7th Dist. Columbiana No. 19 CO 0006, 2019-Ohio-5091, ¶ 30, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985); *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 119 (1954). "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Koch v. Ohio Acres4U LLC*, 2018-Ohio-

Case No. 20 CA 0945

2763, 115 N.E.3d 748, ¶ 25, (7th Dist.), citing *In re Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986); *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). In reviewing whether the lower court's decision was based on clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Koch* at ¶ 25, citing *Schiebel* at 74.

{¶23} Although an overall award is reviewed for abuse of discretion, "[a]n appellate court applies a manifest weight of the evidence standard of review to a trial court's designation of property as either marital or separate." *Miller v. Miller*, 7th Dist. Jefferson No. 08 JE 26, 2009-Ohio-3330, ¶ 20, citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997). "Therefore, the judgment of the trial court will not be disturbed upon appeal if supported by some competent, credible evidence." *Miller* at ¶ 20, citing *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 468, 628 N.E.2d 1343 (1994); *Spier v. Spier*, 7th Dist. No. 05MA26, 2006-Ohio-1289, ¶ 38.

{¶24} "When the parties contest whether an asset is marital or separate property, it is presumed to be marital property unless proven otherwise." *Sangeri v. Yerra*, 10th Dist. Franklin No. 19AP-675, 2020-Ohio-5520, ¶ 39 citing *Wolf-Sabatino v. Sabatino*, 10th Dist. Franklin No. 10AP-1161, 2011-Ohio-6819, ¶ 11. The "party requesting that an asset be classified as separate property bears the burden of tracing that asset to his or her separate property." *Id.*

{¶25} Here, the sale proceeds from the sale of the Mohawk property were used to secure the Chase Road property. The parties then sold the Chase Road property and the proceeds were used to improve the Canton Road property. In addition, Appellant and

Appellee jointly applied for and received a line of credit to further improve the Canton Road property. At the time of the divorce, the parties owed $28,659.91 on this line of credit.

**{¶26}** Appellee was awarded exclusive possession of the Canton Road property. The trial court used the following math to determine the parties' proceeds:

| | |
|---|---|
| Chase Road proceeds (Joint): | $158,314.53 |
| Mohawk proceeds (Separate – Appellee): | <$63,500> |
| Joint proceeds total: | $94,814.53 |

**{¶27}** Based on this math, Appellant was offered the following options: one-half of the joint proceeds ($47,407.27), or one-half of the value from improvements to Canton Road ($10,900) for which joint funds were used. The court determined that Appellant was not entitled to the benefit of both options as they represented the same funds: the Chase Road sale proceeds. We note that the Canton Road property was determined to be separate property belonging to Appellee, thus its value was never taken into consideration. However, the court did recognize that the improvements were financed through joint proceeds received from the sale of the Chase Road property. The "improvement value" used by the court appears to be the difference between an appraisal of the property before and after the improvements were completed. The narrow issue before us is whether the court properly determined that the Canton Road property was separate property.

**{¶28}** Ohio courts have given the trial court's factual determinations significant weight where its conclusions are supported by the record. As this analysis is necessarily fact specific, it has led to inconsistent results. For instance, the Second District affirmed

Case No. 20 CA 0945

the trial court's decision that the appellant's parents gifted real estate to both parties, not just the appellant. *Combs v. Combs,* 2d Dist. Champaign 2019-CA-2, 2019-Ohio-3685. In that case, the appellant's parents testified that the property was intended to be a gift solely to their son. The trial court found the testimony to be self-serving and determined it "is easy to say now that the parties are in the middle of a divorce, their marriage is over. The Court would expect that from parents. However, the Court does not believe that was Plaintiff's parents' intention at the time they sold the property when times were good between their son and his wife." (Emphasis deleted.) *Id.* at ¶ 4.

{¶29} In affirming the trial court, the *Combs* court relied on several factors. *Id.* at ¶ 6-8. First, a closing statement was admitted into evidence. That statement contained a notation that the property was a gift and both names were listed. Second, the appellant failed to provide any reason why the gift would be anything other than joint, considering the parties were not intending to divorce at the time the gift was received. Third, although the appellant's parents testified that the property was an early inheritance, there was no testimony as to the value of any inheritance given to his siblings. The court was not persuaded by testimony that the appellant was left out of other inheritance due to this gift. The court explained that there was no testimony or evidence to show what inheritance the siblings would receive. The sole evidence was the parent's testimony that the appellant received the property because he had always helped farm the property. Finally, the court stressed the presumption that gifts made during a marriage are marital property and the party seeking to declare the gift as separate bears the burden of proving otherwise.

**{¶30}** In contrast, the Second District found property to be a gift intended to benefit only one party where only self-serving testimony was presented. *Johnson v. Johnson,* 2d Dist. Greene No. 2018-CA-36, 2019-Ohio-1024, ¶ 16-17. The court relied on the fact that although the record lacked any extrinsic evidence to support the testimony, the opposing party presented no evidence to rebut that testimony. *Id.* at ¶ 17.

**{¶31}** The Second District has also held that "[o]ral testimony as evidence, without corroboration, may or may not satisfy the burden." *Maloney v. Maloney,* 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 23 (2d Dist.) In other words, uncorroborated testimony may satisfy the burden depending on the evidence presented as a whole.

**{¶32}** Our analysis of the issue begins with a review of whether the trial court's determination that the property was a gift intended to benefit Appellee, alone, is supported by competent, credible evidence. In finding that the gift was intended to benefit only Appellee, the court relied on testimony from Appellee's mother. His mother, however, provided conflicting testimony. She testified that she intended to gift two separate pieces of real estate to each of her two children, Appellee and his sister, as an early inheritance. (Trial Tr., p. 180-181.) The record shows that Appellee's sister will not receive her inheritance, however, until the mother passes, because the mother continues to reside in that property. Thus, if the testimony of Appellee's mother is to be believed, she intended for only Appellee to obtain an early inheritance and not her daughter, despite her testimony that she provided an early inheritance to both children.

**{¶33}** Appellant concedes that only Appellee's name appears on the deed. At trial, Appellant appeared confused by this, as she had completed paperwork to add her name to the deed at some point before the parties' separation. Apparently, this paperwork

was never filed. Nonetheless, R.C. 3105.171(H) provides that "[e]xcept as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Thus, the fact that Appellee's name, alone, is on the deed is irrelevant.

{¶34} It is clear that the trial court resolved the inconsistency in Appellee's mother's testimony and determined that the gift was intended to benefit only Appellee. Appellant has not presented any evidence to rebut this specific finding. However, this does not completely resolve the issue. Even if the court properly determined that the gift was initially intended to benefit only Appellee, it must then be determined whether he took steps to transform the property into marital property. The trial court failed to undertake any analysis on this issue, instead stating in conclusory fashion that the property had not been so transformed. It is apparent from this record there is a plethora of relevant evidence that was not considered in determining whether commingling had occurred to such an extent that the property had been transformed into martial property.

{¶35} The following elements must be taken into consideration by the court:

1) intent of the donor to make an immediate gift; 2) delivery of the property to the donee; and 3) acceptance of the gift by the donee. When a court is asked to determine whether real property acquired prior to marriage was converted to marital property by one spouse granting another interest in the real property, the key issue is donative intent. Donative intent is established if a donor intends to transfer a present possessory interest in an asset. Regarding gifts between spouses, the donee has the burden of showing by

clear and convincing evidence that the donor made the intervivos gift with the intention of waiving all rights and interest he/she may have had in the gift items as martial property.

*Plymire v. Plymire*, 7th Dist. Noble No. 17 NO 0443, 2018-Ohio-2786, ¶ 47.

**{¶36}** Although Appellee heavily relies on the fact that Appellant's name does not appear on the deed, as already discussed this fact has little relevance. However, it is relevant that the names of both parties appeared on a joint line of credit which was secured by the property and intended to provide for improvements to the property. The trial court appears to ignore this evidence, evidence discounted by Appellee. We note that, while this fact alone would not necessarily establish an intent to transform the property from separate into marital, it is not the only relevant evidence of record in this regard.

**{¶37}** We have previously held that whether a mortgage was paid using marital funds is relevant to a determination as to whether property is marital or separate. *Moschella v. Moschella,* 7th Dist. Mahoning No. 05-MA-25, 2006-Ohio-3635, ¶ 14. In *Moschella* we held that even if the party asserting separate property "were able to trace some of that equity back to his separate property, whatever that figure might be, it was largely subsumed into marital property since the mortgages were paid back with marital funds." *Id.* at ¶ 14.

**{¶38}** All of the income received by both Appellee from his business and Appellant from her monthly disability check and her mother's life insurance proceeds (which were her separate property) were deposited into Appellee's individual checking account. The parties did not have a joint bank account. Instead, Appellee controlled all of the parties'

money and paid all of the monthly bills. The trial court failed to consider the fact that income received by both parties was used to pay the monthly bills, and specifically, expenses of the Canton Road property. In addition to monthly mortgage payments, these expenses appear to include the line of credit, property taxes, homeowner's insurance, and utility bills.

**{¶39}** Appellant provided unrebutted testimony that she signed over her mother's life insurance proceeds to Appellee to help pay for the expenses of the Canton Road property. She explained that she did so only because she was under the impression these proceeds were martial property. Appellee discusses the fact Appellant gave him these proceeds because he paid the bills in a separate assignment of error. However, he ignores this crucial fact in discussing the commingling of assets and transformation of property. In his discussion, Appellee contends that Appellant gave him the proceeds because he paid the monthly premiums on the policy. This is irrelevant, as it is uncontested Appellant was the sole beneficiary of the policy. Regardless, Appellee cannot claim to have solely paid the premium where both parties' income was deposited into the same bank account and these joint funds were used to pay the premium. Again, it is uncontested that although the account bore only Appellee's name, joint funds were deposited into the account and these funds paid all of the parties' expenses. Appellee's own admission that he used the life insurance proceeds at least in part to pay expenses of the Canton Road property is critical to this analysis, pursuant to *Moschella*.

**{¶40}** As earlier discussed, in addition to the life insurance proceeds, Appellant's monthly disability checks were deposited into Appellee's bank account and were used to pay the parties joint monthly expenses, including those related to the Canton Road

property. Again, pursuant to *Moschella,* this is significant evidence of commingling that should have been considered by the trial court in its analysis as to whether the property had been transformed, but was not considered.

{¶41} Based on the record in this case, because income generated from each party was deposited into the same account which was used to pay all of the parties' monthly expenses, it would be difficult, if not impossible, to trace how much money each party invested in the property.

{¶42} While this record supports the trial court's determination that the property initially was a gift intended to benefit Appellee, alone, it is clear a proper analysis as to whether that property was later transformed by commingling of assets into marital property did not occur. While Appellee produced evidence to determine donative intent, there are three elements that must be evaluated to determine if separate property has been transformed into marital property. No such evaluation appears in this record, despite the fact that evidence was submitted on this issue. Hence, we remand the matter to allow the trial court to determine whether all elements have been satisfied. Appellant's first assignment of error has merit and is sustained.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The Trial Court erred and abused its discretion in determining that the two (2) Certificate Deposits through PNC Bank were a gift and therefore nonmarital property.

{¶43} Appellant argues that the trial court abused its discretion in determining that two CDs were separate property belonging to Appellee. Appellant urges that the parties

<u>Case No. 20 CA 0945</u>

were married on June 17, 1994, and the CDs were opened on July 2, 1994 and December 19, 2009. Because these gifts were received during the marriage, Appellant argues they are marital property unless Appellee provided clear and convincing evidence that these CDs were intended to be gifted solely to him. Appellant argues that the sole evidence supporting the notion that this property is separate is the testimony of Appellee and his mother. Appellant contends that their testimony does not rise to the level of clear and convincing evidence, particularly as Appellee filed with the trial court a notarized affidavit of property which listed no premarital gifts or inheritance.

{¶44} Appellee responds that the two CDs in question were opened prior to the marriage. Although he does not have any additional paperwork, he claims that his mother opened one CD for him when he graduated from high school in the 80's, and the other sometime before the marriage, likely in the 90's. He contends that the dates referred to by Appellant represent the date those CDs were transferred after the original bank at which they were opened was purchased by PNC Bank. Appellee argues that his failure to add these items to his affidavit of property was a mere oversight which he corrected through his testimony. He points out that Appellant omitted these CDs from her affidavit, as well.

{¶45} Although Appellant does not accurately quote the relevant statute, it appears that she is basing her argument on R.C. 3105.171(A)(6)(vii), which provides that separate property is "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."

{¶46} The evidence regarding the two CD's at issue is limited to testimony from Appellee and his mother that she opened both CD's in his name prior to the parties' marriage, and documents from PNC Bank. Appellee and his mother testified that one CD was opened in the 80's following his high school graduation. The other was opened in the 90's, some time before his marriage in 1994. The actual documents from PNC include a handwritten note indicating that the CDs were opened on July 2, 1994 and December 19, 2009. Both of these dates occurred during the parties' marriage.

{¶47} According to Appellant, the CDs were opened at two banks that later merged with PNC. Appellee testified that the dates on the PNC paperwork do not reflect the date the CDs were actually opened. He contends that the dates reflect when the CDs were transferred to PNC after the merger. Appellee did not provide an affidavit or any evidence from PNC or the original banks to corroborate this testimony. In rebuttal, Appellant cites to Appellee's affidavit of property in the instant action where he listed the CDs as marital property. Appellee claimed at trial that this was a mistake on his part.

{¶48} Appellee appeared unsure of the details surrounding the CDs at trial. He provided the following testimony:

Q Okay. Um…and do you, who owns them [the CDs]? Are they in your name; are they jointly owned? Are they in your wife's name? Whose name are they in?

A Good question. I believe they're in my name.

* * *

Case No. 20 CA 0945

A  I don't remember the dates.  Um…my mom bought, purchased those back in…probably in the eighties and nineties.  Somewhere in there.

(Trial Tr., p. 103.)

{¶49}  Although the trial court determined the two CDs were separate property belonging to Appellee, the court did not explain on what evidence it relied in arriving at this determination.  Although Appellee did not know whether the CDs were in his name or in both names, he did testify that they were opened years earlier and prior to the parties' marriage.  Appellee's mother provided similar testimony.  In contrast, Appellant points to Appellee's affidavit of property and relies on the PNC paperwork, which appears to show that the CDs were opened after the parties' marriage.

{¶50}  Although Appellee and his mother's testimony can be characterized as self-serving and uncorroborated, this issue was resolved by making a determination as to credibility.  It is apparent that the trial court chose to believe Appellee and his mother.

{¶51}  This situation is similar to that in *Johnson, supra.*  In that case, the trial court found that a 401K was separate property belonging to the husband even though the only evidence before the court was self-serving testimony.  The *Johnson* court affirmed the trial court's determination because the record was devoid of evidence to rebut the testimony and it was up to the trial court to determine credibility.  *Johnson* at ¶ 17.

{¶52}  Because there is evidence which, if believed, supports the trial court's decision, Appellant's second assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 3

The Trial Court erred and abused its discretion by determining that the
Plaintiff was entitled to no proceeds from her Mother's life insurance policy.

**{¶53}** Appellant argues that the trial court abused its discretion when it awarded Appellee the proceeds of her mother's life insurance policy when she was the sole beneficiary. Appellee responds that the money was depleted prior to the parties' separation as he used it to pay marital bills.

**{¶54}** The trial court determined that the life insurance proceeds were depleted based on Appellee's testimony. Appellant testified that she signed the proceeds over to Appellee so he could pay the monthly marital bills, particularly the expenses related to the Canton Road property. While these undisputed facts are relevant to Appellant's first assignment of error, the testimony shows that the life insurance proceeds have been depleted. Thus, there is competent and credible evidence to support the trial court's determination that no award to a specific party in this regard can be made because no property exits. As such, Appellant's third assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 4

The Trial Court erred and abused its discretion by not including the value of
the tools of the Defendant in its property division.

**{¶55}** Appellant argues in a conclusory fashion that tools purchased by Appellee and apparently used in his business were marital assets. Appellee concedes that his tools, which he uses for his business, were not evaluated. However, he argues that

Appellant elected to proceed in this matter using an income evaluation rather than a business evaluation. Hence, his assets and his losses were not evaluated.

{¶56} As to Appellee's business expenses, the court determined:

A business evaluation was not conducted to determine the value of the business and, instead an income evaluation was conducted to determine the amount of income Defendant's business generates for him. Assets that are used for the running of the business, as well as debts incurred in running the business, such as the Consumer's business checking account, tools of the trade, the PNC business line of credit, the accounts owed to suppliers, should not be factored into the division of marital debts and assets as a business evaluation was not completed to determine an overall value of that business. The amount that is left after paying Defendant's operating expenses will be used to determine spousal support. The assets of the business are necessary for Defendant to run his business, generate income, and therefore be able to pay Plaintiff spousal support.

(9/16/20 J.E., ¶ 47.)

{¶57} It appears from this record the trial court did consider at least some losses pertaining to Appellee's business. For instance, while determining Appellee's income, the court addressed a $600 expense related to a home office deduction. According to Appellee, he received the deduction because he runs his business out of a home office located on the Canton Road property. The court also deducted $3,160 from Appellee's income as that amount covers the liability insurance for his business. Also, the court

Case No. 20 CA 0945

deducted $521 from Appellee's income for utilities he paid for his home office. Despite this action by the trial court, Appellee correctly states that other assets and debts may not have been taken into consideration due to the evaluation method chosen by the parties.

**{¶58}** We note that Appellee did not have a personal checking account and used his business account to pay marital bills during the majority of the marriage. Thus, his personal and business funds were commingled during certain years. However, as the record does not indicate when the tools were purchased, it is unclear whether Appellee used marital funds to purchase the tools.

**{¶59}** Even so, the court's divorce decree is the first place where the tools are mentioned. No evidence regarding these tools was presented at trial and Appellant did not request a valuation of Appellee's tools at trial. Thus, Appellant has waived this issue. Appellant's fourth assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 5</u>

The Trial Court erred and abused its discretion arriving at the Defendant's income in order to determine spousal support.

**{¶60}** Appellant contends that Appellee has inconsistently provided evidence of his annual income throughout the process. Appellant states that the trial court should have found Appellee's income was $75,000, but does not explain why.

**{¶61}** Appellee responds by arguing that Appellant's own expert witness determined his yearly income was $58,949. The court properly balanced the expert witness report alongside several years of tax returns.

<u>Case No. 20 CA 0945</u>

**{¶62}** From the divorce decree, it appears that the court considered the following evidence: a report by John D. Davis of Davis & Company who was hired by Appellant, a loan application filed by Appellee, a life insurance policy application filed by Appellee, and tax returns for 2015, 2016, 2017, and 2018. It seems that the court used the Davis report as the starting point for its analysis. The court then adjusted the figures in the report to remove certain debts misclassified as income, and Appellee's insurance policy, which was included as income. The court also added income that had been deducted for tax purposes. The court considered Appellee's claimed income as listed on applications for a loan ($4,506 per month) and a life insurance policy ($120,000 yearly). Additionally, the court considered four years of tax returns. As a result, the trial court concluded Appellee had an income of $55,000.

**{¶63}** Admittedly, the court's math in this regard is difficult to follow. However, it can be gleaned from the record that Appellant's expert witness report was amended to add improperly included and excluded amounts taken from four years of tax documents. The trial court expressly considered the amounts listed on the loan and life insurance applications, but found both documents to be inaccurate. Based on this record, the trial court did not abuse in discretion in determining Appellee's yearly income. As such, Appellant's fifth assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 6

The Trial Court erred and abused its discretion by not awarding the Plaintiff

any of her attorney fees incurred in the course of the divorce litigation.

Case No. 20 CA 0945

**{¶64}** Appellant asserts that as she only receives disability, her income will never increase. On the other hand, Appellee runs an apparently successful plumbing business. Consistent with law from the Twelfth District, Appellant argues that an award of attorney fees is necessary in this matter.

**{¶65}** In response, Appellee argues that the law relied on by Appellant is no longer good, as it predates R.C. 3105.73(A). Appellee contends that a court is not required to consider a party's ability to pay attorney fees. Although it is not reflected in court documents, Appellee contends that Appellant caused the cost of litigation to increase due to misconduct that required additional hearings and due to her choice to hire an out-of-town attorney who required traveling expenses.

**{¶66}** Appellant provides only the name and district of the case on which she relies. While there are two cases titled "Dunn v. Dunn" decided by the Twelfth District, it appears she may be referring to *Dunn v. Dunn*, 12th Dist. Clinton No. CA2004-08-020, 2005-Ohio-5477.

**{¶67}** Appellee correctly notes that *Dunn* is no longer applicable, as it predates the relevant statute. See *Lewis v. Lewis,* 7th Dist. Jefferson No. 06 JE 49, 2008-Ohio-3342. Instead, the controlling statute is R.C. 3105.73.

**{¶68}** Pursuant to R.C. 3105.73(A),

In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award

of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

**{¶69}** The trial court did not specifically state its reasons for requiring each party to pay their own attorney fees. However, the court did note within the decree that each party incurred "substantial attorney fees throughout the pendency of the divorce." (9/16/20 J.E., ¶ 71.)

**{¶70}** This may reflect additional hearings that were held because of some conduct on Appellant's part. For instance, Appellee alleged that Appellant damaged his property, which required a hearing. Also, Appellant appears to have taken personal property belonging to Appellee, which resulted in a contempt hearing. Appellant also opened an online bank account and linked it to Appellee's, withdrawing money without his permission. This also resulted in a contempt hearing. The record shows that Appellant hired an attorney based in Akron who incurred travel expenses in this matter. Although the trial court did not state its reasons, there are facts in the record to support the court's decision. Thus, the trial court did not abuse its discretion in requiring each party to pay their own attorney fees. Appellant's sixth assignment of error is without merit and is overruled.

## Conclusion

**{¶71}** Appellant argues that certain property, both real and personal, was improperly awarded to Appellee. Appellant also argues that the court erred in determining Appellee's yearly income and in failing to award her attorney fees. For the reasons provided, the trial court failed to consider evidence as to whether the parcel of real estate referred to as the Canton Road property was transformed into marital property. The

Case No. 20 CA 0945

remainder of Appellant's arguments are without merit. Accordingly, the matter is remanded for the purpose of determining whether the property was transformed into marital property after the gift to Appellee from his mother was completed. The remainder of the trial court's judgment is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error is sustained and her remaining assignments are overruled. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Carroll County, Ohio, is affirmed in part and reversed in part. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**

<u>Case No. 20 CA 0945</u>